UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2829
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARION JACKSON ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____
(July 8, 1993)
(                              )


Before GARWOOD, JONES and EMILIO M. GARZA Circuit Judges.

GARWOOD, Circuit Judge:

In this appeal from the sentence imposed following his plea of guilty to three charges of bank robbery, defendant-appellant Marion J. Adams (Adams) challenges only the district court's denial of his request for a downward departure in consideration of his disclosure of prior offenses, pursuant to U.S.S.G. § 5K2.16, policy statement (p.s.). We affirm.

**Factual Background**

In June and July of 1991, Adams went on a three-week spree in which he robbed three banks, one in Mobile, Alabama, and two in

Houston, Texas, in an effort to obtain money to support his drug habit. The *modus operandi* in each robbery was similar: in each, Adams approached a teller for help with a simple transaction; when the teller opened the cash drawer, he jumped up on the counter, grabbed money from the drawer, and fled from the bank.[1]

Adams was implicated in the Alabama robbery when the description of the robber provided by persons in the bank at the time of the robbery proved to be similar to that of the defendant, then known as Jay Adams, who at that time was under investigation by the Mobile Police Department for burglary and illegal possession of credit cards taken in a burglary. Pictures of "Jay Adams" were included in a photographic lineup presented to witnesses of the bank robbery; three witnesses positively identified defendant as the bank robber.

On July 24, 1991, officers of the Houston Police Department stopped Adams for a traffic violation. When a routine computer

---

[1] On June 17, 1991, Adams robbed a branch of the Altus Bank in Mobile, Alabama. He approached a teller and requested change for one dollar; when the teller opened the cash drawer, he vaulted on top of the counter, grabbed $4,110, including $100 in bait money, and fled.

On June 24, 1991, Adams entered Bank Plus Savings Association in Houston, Texas, and asked a teller to change quarters into dollar bills. When she opened the cash drawer, he pretended to have a gun in a pocket and told the teller to give him money and move away from the drawer. Adams jumped onto the counter, stole approximately $2,300, and ran.

On July 2, 1991, the defendant entered First Gibraltar Savings Bank in Houston and handed a teller a note informing her that he was robbing the bank and instructing her to open the drawer and back away from it. When the drawer was open, he jumped on the counter, and removed money. He took money in the same fashion from another teller before fleeing the bank. Adams stole approximately $2,000 in this robbery.

check revealed that he was wanted in Alabama for escape from an Alabama state prison, the officers took him into custody. Adams later confessed to the three bank robberies.

**Proceedings Below**

On December 19, 1991, Adams was indicted in the United States District Court for the Southern District of Alabama on one count of bank robbery, in violation of 18 U.S.C. § 2113(a).

On February 5, 1992, in the United States District Court for the Southern District of Texas, Adams was charged by information with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a), stemming from the robbery of the two Houston banks. Adams waived indictment in the Texas proceedings and agreed to a transfer of the Alabama case to the Southern District of Texas, where it was later consolidated with the other two bank robbery charges pending against him.

At his rearraignment, Adams pleaded guilty to all three counts of bank robbery in exchange for the government's promise to stipulate to Adams's acceptance of responsibility and for its agreement not to file additional charges related to the three bank robberies.

A presentence report (PSR) prepared by Adams's probation officer calculated his offense level at 23, with a criminal history category of VI, resulting in an imprisonment range of 92 to 115 months.[2] In a sentencing recommendation to the district court, the

---

[2] The base offense level for robbery is 20, pursuant to U.S.S.G. § 2B3.1. Adams received a two-level increase because his offense involved a financial institution. U.S.S.G. §

probation officer recommended that the court depart upward to sentence Adams to 125 months' imprisonment, a departure justified by the defendant's extensive criminal history, which included convictions for burglary not utilized in the computation of his criminal history category.

In his objections to the PSR, Adams argued, *inter alia*, that he was eligible for a downward departure pursuant to U.S.S.G. § 5K2.16, p.s., for his actions in disclosing his involvement in the bank robberies.

The government filed a sentencing memorandum urging the district court to sentence Adams pursuant to the career offender provisions of U.S.S.G. § 4B1.1. In the alternative, the government moved for an upward departure on the grounds that the criminal history category otherwise applicable was inadequate.

The probation officer reconsidered his earlier recommendation and filed an addendum to the PSR recommending that Adams be considered a career offender. The applicable base offense level was 32; a two-level reduction for acceptance of responsibility lowered his final offense level to 30.[3] With a criminal history category of VI, his imprisonment range was 168 to 210 months. The

2B3.1(b)(1). The grouping rules of section 3D1.4(a) required an adjustment by three units for the three counts of robbery, yielding an offense level of 25. Finally, Adams received a two-level reduction for acceptance of responsibility, generating a net total offense level of 23.

[3] The career offender provisions of U.S.S.G. § 4B1.1 establish an offense level of 32 for offenses for which the statutory maximum is twenty years or more, but less than twenty-five years. The statutory maximum for Adams's bank robbery convictions is twenty years, pursuant to 18 U.S.C. § 2113(a).

addendum also noted, in response to Adams's objections, that several witnesses in Alabama had identified him and therefore his offenses would not have remained undiscovered long had he not already confessed them.

The district court denied any departure upward or downward and sentenced Adams, as a career offender, to concurrent terms of 200 months' imprisonment on each count, imposed a 3-year period of supervised release, and ordered Adams to pay restitution in the amounts of $4,700.10 to Altus Bank in Mobile and $2,196 to First Gibraltar in Houston.

Adams appeals only the district court's refusal to depart downwards pursuant to section 5K2.16, p.s.

## Discussion

Adams contends that the district court ought to have departed downward from the applicable guideline range based on his voluntary disclosure of the three bank robberies after he was arrested, during a routine traffic stop, on the outstanding escape-related warrant. He claims that there was no proof that the law enforcement authorities were investigating him for the Houston bank robberies or that they had found any connection between those robberies and the one in Mobile, Alabama.

We will uphold a sentence imposed pursuant to the guidelines unless it is imposed in violation of law, or is the result of incorrect application of the guidelines, or is a departure from the applicable guideline range and is unreasonable. 18 U.S.C. § 3742(e); *United States v. Buenrostro*, 868 F.2d 135, 139 (5th Cir.

5

1989), *cert. denied*, 110 S.Ct. 1957 (1990).  We review the district court's legal interpretations of the guidelines *de novo*, *United States v. Suarez*, 911 F.2d 1016, 1018 (5th Cir. 1990), and factual findings for clear error, *United States v. Mourning*, 914 F.2d 699, 704 (5th Cir. 1990).  A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole.  *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991).

Departures from the guidelines are within the broad discretion of the district court.  *United States v. Roberson*, 872 F.2d 597, 601 (5th Cir.), *cert. denied*, 110 S.Ct. 175 (1989).

It is well established in this Circuit that we "'will not review a district court's refusal to depart from the Guidelines, unless the refusal was in violation of the law.'"  *United States v. Mitchell*, 964 F.2d 454, 462 (5th Cir. 1992) (quoting *United States v. Hatchett*, 923 F.2d 369, 373 (5th Cir. 1991)); *United States v. McKnight*, 953 F.2d 898, 906 (5th Cir.), *cert. denied*, 112 S.Ct. 2975 (1992).  *See also United States v. Buenrostro*, 868 F.2d at 139 ("It follows that we will uphold a district court's refusal to depart from the guidelines unless the refusal was in violation of law.  . . .  A claim that the district court refused to depart from the guidelines and imposed a lawful sentence provides no ground for relief.").

The district court did not explain its reasons for denying the downward departure, nor did it suggest that it believed it was

without authority to do so.[4]  In *United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir. 1992), we suggested in dicta that we would review a district court's refusal to depart if that refusal were based on a mistaken belief that the departure was not legally permitted.  In that case, we found that the district court refused to depart downwards not because it believed that the guidelines or other law precluded it from doing so, but rather because it did not agree that the defendant suffered from an alleged reduced mental capacity such that he would be eligible for a departure pursuant to U.S.S.G. § 5K2.13.  Similarly, the record before us supports the conclusion that the district court did not refuse the requested departure out of any mistaken belief that it was precluded by law from departing downwards, but rather because it determined that Adams's actions in confessing his involvement in the bank robberies did not warrant such a departure.  This is evidenced by the fact that, in sentencing Adams to 200 months' imprisonment, the district court selected a term in the top half of the applicable sentencing range of 168 to 210 months.  The court plainly had the discretion to sentence him to 168 months' imprisonment, but it chose not to do so.

Because we find that the district court's refusal to depart was not in violation of law, nor made in the mistaken belief that it was unable to depart, we will not review the denial of Adams's

---

[4]     In stating his decision not to depart, the court merely said:  "The Government has recommended an upward departure and your lawyer has asked me to go downward.  I'm going to do neither.  I'm going to stay within the guideline range . . . ."

7

request for a downward departure.

Even were we to review the district court's decision, we would affirm. The district court did not abuse its discretion because a finding that Adams did not meet the criteria of section 5K2.16, p.s., on the basis of which the downward departure was sought, would not be clearly erroneous. Section 5K2.16, p.s., provides that a departure below the applicable guideline range "may" be warranted

> "[i]f the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, *and if such offense was unlikely to have been discovered otherwise* . . . . For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that *otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent*, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct." U.S.S.G. § 5K2.16, policy statement (emphasis added).

Adams claims that he should have received a departure under this section because the robberies were unlikely to have been discovered in the absence of his confession. He emphasizes his remorse, acceptance of responsibility, and the fact that he requested the transfer of his cases to the federal system although he would face stricter punishment there.[5]

The section 5K2.16 departure is not available where the offense would not likely remain undiscovered *or* where the

---

[5] Adams was in state custody at the time of his confessions for pending state charges arising from the Houston bank robberies.

defendant's disclosure is motivated by the knowledge that discovery of his offense is "likely or imminent." Such is the case before us. Adams does not dispute that the Alabama connection was known to the Houston police from the time he was stopped for the traffic violation. Further, Alabama authorities then suspected him in the Mobile bank robbery on the basis of identification by three witnesses to that robbery. Finally, the similarities between the robbery in Alabama and those in Houston heightened the probability that officers investigating the robberies would have found the connection. Thus it could reasonably be found that Adams had not demonstrated that he met the criteria stated in section 5K2.16 because the discovery of his involvement in the robberies was at least likely, if not imminent.[6]

The government argues that Adams was not entitled to a section 5K2.16 departure because his *offenses* were not unknown but only his status as the *offender*, *i.e.*, that this section applies only to undiscovered offenses. It is unnecessary for us to reach this issue, however.

### Conclusion

Because Adams has not established that the district court's refusal to depart downward was in violation of law, nor that the district court refused to grant the departure out of a mistaken

---

[6] Even were we to accept Adams's argument that his involvement in the Texas robberies would have remained undiscovered, and thus he was *eligible* for a downward departure for two of the three counts with which he was charged, we would not reverse Adams's sentence absent a showing of abuse of discretion by the district court. This Adams has not shown.

belief that departure was precluded by law, his appeal is without merit and his conviction and sentence are

AFFIRMED.