REVISED - June 28, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 99-31092

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL ANTHONY THAMES,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Eastern District of Louisiana

---

June 13, 2000

Before GARWOOD, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

Michael Anthony Thames ("Thames") appeals from the sentence imposed by the district court for the Eastern District of Louisiana, the Honorable Veronica Wicker,[1] presiding, after he pleaded guilty to two counts of armed robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and one count of use of a firearm during the commission of a felony in violation of 18 U.S.C.

---

[1] Judge Wicker passed away sometime after sentencing Thames and as a result, this case was reassigned to Judge Martin Feldman on December 2, 1993.

§ 924(c)(1). For the reasons discussed below, we affirm the sentence imposed.

## BACKGROUND

The facts of this case are undisputed and the following recitation thereof is taken primarily from the pre-sentence report ("PSR") prepared for the district court by the United States Probation Office. Michael Thames was a police officer for the New Orleans Police Department. On May 29, 1992, he used a small, snub-nosed blue steel revolver to rob the Hibernia National Bank on Canal Boulevard in New Orleans. In June 1992, the FBI had obtained an identification of Thames as the robber through confidential source information. Approximately one year after the first robbery, on April 19, 1993, Thames used a .38 caliber Smith and Wesson revolver to again rob the same branch of the Hibernia National Bank. It was when the Hibernia Bank was robbed the second time, by an individual matching his description, that the FBI located and questioned Thames.

FBI agents stopped Thames in his vehicle, and upon questioning, he consented to a search of his vehicle which produced some of the money from the second robbery containing a dye pack inserted therein by one of the tellers. Thames admitted to committing both robberies and voluntarily went with the agents to his residence where he retrieved and turned over the rest of the

money from the second robbery. He subsequently admitted his guilt as to both robberies to a probation officer and stated that he had a gambling problem. The probation officer ultimately prepared a PSR recommending a range of imprisonment of 70 to 87 months on the robbery charges and the minimum mandatory 60 months applicable to the firearms charge.

The government filed a motion with the district court asking it to sentence Thames at the low end of the guidelines range based on his early willingness to give a truthful account of his involvement in the robberies, but it stopped short of filing a § 5K1.1 motion for departure from the guidelines because in the government's opinion, Thames had not offered substantial assistance. Thames informed the district court at his sentencing hearing that he had a gambling addiction, and he suggested that his status as a former New Orleans police officer would subject him to the risk of physical harm in prison. The government reminded the district court that Thames had cooperated as stated in its motion, and it requested that the district court inform the Bureau of Prisons of Thames' status as a former police officer.

On September 21, 1993, the district court sentenced Thames at the lowest end of the guidelines range, to a term of imprisonment of 70 months on the two robbery counts, to be served concurrently, and it sentenced him to a statutory mandatory minimum 60-month term of imprisonment on the firearms count, to be served consecutive to the sentence for the robbery counts. Thames was also ordered to

pay restitution in the amount of $25,639 to Hibernia National Bank.

After announcing Thames' sentence, the district court expressed its concern that the guidelines range for Thames' offenses were rather high given that he was a first-time offender. Specifically the district court stated for the record:

> Let me say that, although I'm aware of your conditions, your mental conditions, and the fact that you need treatment on two very important areas. One is the manic depressive mood swings and the other is your gambling addiction, I find nothing in the guidelines to permit this Court to deviate because of your illnesses. And I feel that because of the manner in which the sentencing guidelines are set out at this time, that the court could not deviate from what the sentencing guidelines impose. However I wish the record to reflect that you are a first time offender and I think that the guidelines are rather harsh for the crimes that were committed, but I feel compelled by those guidelines to give you the sentence that I have. I'm not sure that perhaps at some time in the future those might be changed . . . . But I wanted you to be aware of that, Mr. Thames, although I may not fully agree with the guidelines, I feel compelled under the facts and circumstances of this case, that they now stand, and the law, to give you the sentence that you are getting, which I think, for a first time offender, is rather high.

The district court permitted Thames to file an out-of-time appeal based upon a miscommunication between Thames and his attorneys as to whether his attorneys were filing an appeal.[2]

---

[2] On April 14, 1997, Thames sought habeas relief under 28 U.S.C. § 2255, requesting an out of time appeal based on his trial counsel's alleged failure to inform him of the ten-day filing requirement for a notice of appeal and failure to perfect an appeal on his behalf. The district court initially denied his request

4

**DISCUSSION**

On appeal, Thames argues that the district court erroneously sentenced him under the mistaken belief that it could not depart from the guidelines.[3] Thames first claims that the district court had authority to depart downward based under U.S.S.G. § 5K2.16, based upon his voluntary disclosure of an additional crime, that is, the first robbery, which according to Thames, would not have been discovered absent his admission. He next claims that the district court had authority to downwardly depart under *Koon v. United States*, 116 S. Ct. 2035 (1996), because he would be subject to abuse in prison as a former police officer. Thames also claims, presumably under U.S.S.G. §§ 5K2.13 and 5K2.0, as well as 18 U.S.C. § 3553(b), that the district court could have departed because his case is "out of the heartland" of cases contemplated by the guidelines based upon both the history of corruption in the New

---

without a hearing, but on appeal, a panel of this Court remanded his § 2255 petition for an evidentiary hearing. On remand, the district court granted his petition, finding that his counsel effectively denied Thames his right to appeal. Thus, Thames' appeal is timely.

[3] We pause here to note that within his "Summary of Argument" Thames also argues that his counsel was ineffective in failing to develop at sentencing that his case was out of the heartland based upon his cooperation and status as a former police officer. However, his ineffective assistance argument is neither listed in his "Statement of Issues Presented for Review" nor addressed in the body of his brief. Accordingly, his ineffective assistance claims must be deemed waived. *See* **L & A Contracting Co. v. Southern Concrete Services**, 17 F.3d 106, 113 (5th Cir. 1994)(issues inadequately briefed are deemed waived)*; see also* Fed. R. App. P. 28(a)(9)(A) & (B).

Orleans Police Department which had led to murders of cooperating officers and the fact that his psychological problems (gambling addiction and manic depressive mood swings) made his conduct inadvertent. Thames finally argues that an aggregation of the above factors took his case "out of the heartland."

We are generally without jurisdiction to review a sentencing court's refusal to grant a downward departure when its decision is based upon a determination that departure was not warranted on the facts of the case before it; however, we do have jurisdiction to review such a refusal when it is based upon the district court's mistaken belief that it does not have the authority to depart, as such a mistaken belief would constitute a violation of law. *See United States v. Palmer*, 122 F.3d 215, 222 (5th Cir. 1997). Whether the district court below believed it lacked authority to depart from the guidelines, and would have otherwise done so, is unclear, but the district court's statement that it found nothing in the guidelines which would "permit it" to do so may indicate that it believed it lacked such authority. The government contends that the district court's comments, taken in context, showed only the district court's criticism and frustration with the guidelines, but in no way signified an erroneous belief of a lack of authority to depart.

Thames did not request a downward departure from the district court, and his arguments regarding his entitlement to a downward

departure based upon his voluntary disclosure of the first robbery, his status as a former police officer, and the aggregation of factors were not made to the district court,[4] thus they are reviewed for plain error only. *See **United States v. Flanagan***, 87 F.3d 121, 124 (5th Cir. 1996) (downward departure requested under safety valve provision, when raised in objections to PSR, but not renewed at sentencing hearing, was to be reviewed under plain error standard). If the error complained of for the first time on appeal is plain and affected substantial rights, this Court may provide relief. *See **United States v. Gaudin***, 115 S. Ct. 2310, 2322 (1995) (stating that if there is a forfeited error, which is plain, and which affects substantial rights, the decision to correct that forfeited error is in the sound discretion of the Courts of Appeals). And under this standard, we should not exercise our discretion to correct a forfeited error unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations omitted). As is more fully set out below, we decline to exercise our discretion to correct these obviously forfeited errors.

The district court did, however, raise *sua sponte* the issue of Thames' entitlement to a downward departure based upon his mental

---

[4] We note that the district court was informed that Thames cooperated early by confessing to the first robbery and that he suffered from mood swings and had a compulsive gambling addiction, but no argument for a downward departure based thereupon was made.

condition when it stated that it found nothing in the guidelines which would permit it to deviate from the guidelines based upon Thames' manic depressive mood swings or gambling addiction. Assuming, *arguendo only*,[5] that plain error review would therefore be inappropriate, we would review the district court's refusal to downwardly depart on this ground for an abuse of discretion. *See **United States v. Winters***, 174 F.3d 478, 482 (5th Cir.), *cert. denied*, 120 S. Ct. 409 (1999). The government, however, argues that Thames' failure to raise a technical objection to the failure of the district court to depart on the basis of his mental capacity requires review under the plain error standard. We need not decide which of these two standards is the most appropriate, because for the reasons discussed below, we find that the district court's failure to grant a downward departure based on Thames' diminished mental capacity was neither an abuse of discretion, nor plain error.

Each of Thames' asserted grounds for entitlement to a departure are discussed below under the appropriate standards.

## A. Voluntary Disclosure of Additional Crime

---

[5] We note that the district court's *sua sponte* address of Thames' mental condition occurred at the end of the sentencing hearing just after the pronouncement of Thames' sentence. We express doubt that Thames' failure to request a downward departure based upon his diminished mental capacity was motivated by the district court's remarks.

Thames first argues that the district court could have departed from the guidelines under U.S.S.G. § 5K2.16 because once arrested for the 1993 robbery, he immediately confessed to committing the 1992 robbery of the same bank. Guidelines § 5K2.16 provides in pertinent part that a departure below the applicable guidelines range may be warranted:

> [i]f the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a departure below the applicable guideline range for that offense may be warranted. For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered. This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct.

U.S.S.G. § 5K2.16.

In this case, the complaint alleges that as early as July 1, 1992, a confidential informant informed the FBI that Thames was the robber of the Hibernia National Bank on May 29, 1992. Thus, it is apparent that the authorities were already "on to" Thames in connection with the first robbery, and when he executed his encore performance approximately one year later at the same branch of Hibernia Bank, and his description was given as the robber, they moved in on him for both robberies. Given that the authorities already suspected, based on the informant's tip, that Thames had

9

committed the first robbery, when he committed and admitted to committing the exact same crime, we conclude that his involvement in the first was likely to be discovered irrespective of his confession.  The guidelines departure provision, § 5K2.16, applies only where the additional offense would not have been discovered but for the defendant's admission.  Here, the crime had already been discovered, and Thames was already a suspect.

Based on the foregoing, the district court's failure to apply § 5K2.16 for a downward departure was not error, plain or otherwise.  *See **United States v. Adams***, 996 F.2d 75, 79 (5th Cir. 1993) (no error in failing to apply § 5K2.16 where defendant was already a suspect and similarities in crimes increased likelihood that authorities would have linked the two).

### B.  Status as a Former Police Officer

Here, Thames argues that the district court could have departed because, as a former police officer who exposed corruption in the New Orleans Police Department, he would be subjected to harassment and abuse in prison, and this fact removed his case from the heartland of cases contemplated by the guidelines.  We find this argument to be without merit.

Relying on ***Koon v. United States***, 116 S. Ct. 2035 (1996), Thames argues that the district court could consider a defendant's susceptibility to abuse in prison as a basis for departing

10

downward. However, in **Koon**, the Court focused on the victim's provocation and misconduct, and on the enormous amount of press and rioting resulting from the beating of Rodney King, in determining that the defendant may be subject to abuse in prison. No such extenuating circumstances are present in this case which make **Koon** controlling. To the contrary, we have noted that a defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position. *See, e.g.,* **Winters**, 174 F.3d at 486 (Sentencing Commission "applied *greater* not lesser sentences" for crimes committed by law enforcement officers).

Thames also argues that his case is removed from the heartland of cases considered by the guidelines because of his cooperation in exposing corruption in the New Orleans Police Department. This contention is belied by the record which reveals that the government stated to the sentencing court that Thames' cooperation was limited to his confession about his own actions. Additionally, there is no adequate basis in the record from which to conclude that Thames cooperated in exposing corruption in the New Orleans Police department to such an extent as to subject him to abuse in prison.

Thus, we find that the district court did not commit error, plain or otherwise, in failing to depart downward based on Thames'

status as a former police officer or for his role in exposing corruption in the New Orleans Police Department.

### C.  Mental Condition

Here, Thames argues that the district court could have departed from the guidelines based upon the fact that his mental condition made his criminal conduct "[in]advertent behavior." Despite the district court's acknowledgment of Thames' manic depressive mood swings, the only record evidence of psychological problems presented by Thames was with respect to his gambling addiction.

A defendant's mental condition may, under certain circumstances, provide grounds for departing from the guidelines. Under U.S.S.G. § 5K2.13, a departure may be warranted:

> if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

U.S.S.G. § 5K2.13.

Under this provision, which is the guideline's specific

12

attempt to take into consideration a defendant's mental condition, no departure may be given where the crime was violent in nature. Thames does not contend that the armed robberies were non-violent, and the record would not permit such a conclusion in any event. Thames committed armed takeovers of Hibernia National Bank's employees and customers in which everyone was ordered, at gunpoint, to lay on the floor while Thames collected money. Under any definition of "crime of violence," such behavior involved an obvious and inherent "serious threat of violence," making § 5K2.13 inapplicable, irrespective of the extent of Thames' reduced mental capacity.

Guidelines § 5K2.0 provides that a district court may also depart from the guidelines when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ." U.S.S.G. § 5K2.0. The Third Circuit addressed a case quite similar to Thames' in *United States v. Rosen*, 896 F.2d 789 (3d Cir. 1990). In *Rosen*, the court determined that the defendant, who claimed entitlement to a downward departure based upon his compulsive gambling, was not eligible for a departure under § 5K2.13 because his crime, sending a threatening communication in the mail to extort money through the threat of injury, was not a non-violent crime. Rosen, however, argued that irrespective of § 5K2.13's inapplicability, the

13

district court misapplied the guidelines in holding that departure was not justified under § 5K2.0, because the guidelines did not adequately take into consideration gambling addictions.

The *Rosen* court looked to § 5H1.3 which provides that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions of Chapter Five." U.S.S.G. § 5H1.3. It went on to determine that a gambling addiction did not qualify under §5K2.13, the only relevant section of Chapter Five. The *Rosen* court concluded that the guidelines had considered and determined that a mental condition of the sort suffered by Rosen would not permit departure in cases involving violent crimes.

We agree with the reasoning of the Third Circuit in *Rosen*, and hold that the guidelines have already adequately taken into consideration a defendant's mental capacity with §5K2.13, and thus §5K2.0 is inapplicable to Thames' claim that his diminished mental capacity, derived from his gambling addiction, entitles him to consideration for a downward departure. Thus, we conclude that the district court was, indeed, without authority to grant a downward departure in Thames' sentence based upon his mental condition, and no error ensued from the district court's failure to grant the same.

## D.  Aggregation of factors

Thames final argument is that a combination of the aforementioned factors takes his case out of the heartland of cases contemplated by the guidelines, and thus, the district court could have granted a departure based thereupon.  As discussed above, each of Thames' arguments is without merit, and quite simply, we conclude that an aggregation of meritless contentions cannot serve as a basis for taking Thames' case out of the heartland of cases contemplated by the guidelines.  Thus, the district court did not commit error, plain or otherwise, in failing to depart from the applicable guidelines sentence range.

## CONCLUSION

For all of the foregoing reasons, the sentence imposed by the district court below is AFFIRMED.

15