REVISED - June 26, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-10709**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**JAMES HAROLD RHODES,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

June 6, 2001

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

James Harold Rhodes ("Rhodes") appeals from the judgment and sentence entered by the United States District Court for the Northern District of Texas, Judge Sam Lindsay, presiding. Pursuant to a written plea and cooperation agreement, Rhodes pleaded guilty to and was convicted of one count of traveling interstate with the intent to engage in a sexual act with a juvenile, in violation of 18 U.S.C. § 2423(b). Rhodes appeals, arguing first that the district court erred in not permitting him an opportunity to

withdraw his guilty plea after rejecting the sentencing guideline provision recommended by the government in the plea agreement, and second, that the district court erred in applying U.S.S.G. § 2A3.1 in determining his base offense level under the Guidelines. For the reasons given below, we affirm the judgment entered and sentence imposed by the district court.

## I.  FACTS

The relevant facts of this case are undisputed, and the following recitation thereof is taken primarily from the factual resume submitted to the district court and to which Rhodes has stipulated.

On May 3, 1999, Rhodes responded to an Internet advertisement placed by an undercover officer with the Dallas Police Department. The advertisement read as follows: "D/W/F in TX with children looking for that certain someone. That special person to help with the life education of the children." In subsequent e-mail correspondence, Rhodes indicated that he desired to come to Dallas for the express purpose of having sexual intercourse with a 12-year-old female child and a 10-year-old male child, both of whom he believed to be the children of the person who placed the original advertisement.

Rhodes made arrangements to travel by commercial airline from his residence in Cleveland, North Carolina to Dallas, Texas, where he believed the individual with whom he had been corresponding

lived.  On July 24, 1999, Rhodes arrived at a hotel in Dallas for a pre-arranged meeting with the person whom he believed was the mother of the two children he hoped to victimize.  According to the factual resume, Rhodes admitted that he traveled to Dallas and to the hotel with the intention of engaging in sexual acts with the two children.

Prior to the meeting in Dallas, Rhodes's correspondence with the "mother" included explicit plans for how he would engage in sex with both the 10 and 12-year-old children.  This correspondence also included Rhodes's statement that he had a previous sexual relationship with an 8-year-old girl.[1]  In the hotel room, Rhodes showed a variety of sexual aids to the "mother," and he explained to her what he planned to do to her children.  Upon entering the separate room where he believed his child-victims were waiting, Rhodes was arrested.

Rhodes was charged in a five-count indictment with traveling interstate for the purposes of engaging in a sexual act with juveniles in violation of 18 U.S.C. § 2423(b) (Counts One and Two), with crossing a state line with the intent to commit a sexual act with a juvenile (a 10-year-old male) in violation of 18 U.S.C. § 2241(c) (Count Three), and with attempting to induce minors to engage in sexually explicit conduct for the purpose of producing pornography that would be transported interstate in violation of 18

---

[1]Rhodes was never arrested or charged with any offense based upon this alleged conduct.

U.S.C. § 2251(a),(d) (Counts Four and Five).  Pursuant to a plea and cooperation agreement, Rhodes agreed and did plead guilty to Count One in exchange for the government's agreement to drop the remaining charges.  With respect to the sentence to be imposed by the district court, the plea agreement provided as follows:

> Pursuant to Federal Rule of Criminal Procedure 11(e)(1)(B) both parties stipulate and agree: 1) that Section 2G1.1 of the Sentencing Guidelines applies to this offense; 2) that the defendant should be sentenced at the lowest end of the applicable guidelines range; . . . .

The plea agreement also provided: "[t]here have been no representations or promises from anyone as to what sentence this Court will impose."

At Rhodes's rearraignment hearing, the district court specifically addressed the plea agreement with Rhodes, who indicated that he had reviewed it with his lawyer and fully understood its terms.  Among its numerous questions regarding Rhodes's comprehension of the terms of the agreement, the district court asked, "[D]o you understand that the terms of this plea agreement are merely a recommendation to the court and that the court can reject the recommendation and impose a sentence that is more severe than you anticipate including a sentence up to and including the maximum allowed by law?"  Rhodes responded in the affirmative, and the district court confirmed Rhodes's understanding of the fact that he would not be allowed to withdraw his guilty plea if the district court did in fact reject the

4

sentencing recommendation and impose a sentence more severe than Rhodes expected.

The probation officer recommended to the district court that it apply Section 2A3.1 instead of Section 2G1.1. In the pre-sentence report ("PSR"), the probation officer noted the parties' sentencing stipulation pursuant to Rule 11(e)(1)(B), but noted that it was "<u>not</u> binding on the Court." In response, the government filed a sentencing memorandum explaining that if the district court chose to use Section 2A3.1, Rhodes "cannot withdraw his plea of guilty." The government further explained that it urged application of Section 2G1.1 because of the relative severity of applying 2A3.1 in a "sting" case where there were no true victims, and the relative severity of Section 2A3.2, which other courts had applied in "traveler sting" cases. Though Rhodes objected to application of Section 2A3.1, and in fact adopted the government's sentencing memorandum, he did not object to the characterization of the sentencing stipulation in the plea agreement as being pursuant to Rule 11(e)(1)(B).

At the sentencing hearing, the district court referred to the parties' sentencing stipulation and stated, "the parties know that the Court is not bound by any agreement the parties have reached concerning a particular plea." Rhodes' counsel indicated, "we understand that." The prosecutor then referred again to the sentencing recommendation, acknowledged that it was not binding, and noted that its rejection would not permit withdrawal of the

plea.  Though Rhodes's counsel noted the possibility that the district court may have to throw out the plea agreement and argued the necessity of choosing no other guideline than Section 2G1.1, he never requested or even expressed a desire for Rhodes to withdraw his guilty plea.

The district court stated that it could not accept the agreement of the parties insofar as the parties agreed "that Section 2G1.1 of the sentencing guidelines apply to this offense." Consequently, the district court declined to accept "that recommendation of the parties" (emphasis supplied).  In response, while referring to the government's "recommendation" to use Section 2G1.1, Rhodes's attorney neither objected to Rhodes being sentenced after the court rejected the recommendation, nor did he request that Rhodes be permitted to withdraw his guilty plea.  Accordingly, the district court imposed a sentence of 63 months imprisonment to be followed by a 3-year term of supervised release.

Though the plea agreement to which Rhodes agreed provided that he waived any right to appeal, the government has explicitly chosen not to rely on that waiver and, in the absence of published authority dictating otherwise, we will not enforce such a waiver when the government explicitly states that it "chooses not to rely on [the defendant's] waiver of appeal."  Thus, we now turn to the merits of the two issues raised by Rhodes in this appeal.

## II.  DISCUSSION

6

## A. Withdrawal of Guilty Plea

Rhodes first argues that the district court erred in "failing to afford [Rhodes] the opportunity to withdraw his plea of guilty after rejecting the plea agreement as required by Rule 11(e)(4)." We note initially that we review this claim for plain error only, as Rhodes neither requested to withdraw his guilty plea nor objected to being sentenced after the district court rejected the parties' sentencing recommendation, and he has raised this issue for the first time on appeal. See United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), abrogated in part by Johnson v. United States, 117 S. Ct. 1544, 1549 (1997). If the error complained of is plain and affects substantial rights, we may provide relief. See United States v. Olano, 113 S. Ct. 1770, 1775-79 (1993). But under this standard, we are not to exercise discretion to correct an otherwise forfeited error unless we conclude that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Thames, 214 F.3d 608, 612 (5th Cir. 2000) (citing Gaudin, 115 S. Ct. at 2322). Such is not this case here.

Despite Rhodes's protestation to the contrary, the record clearly reveals that the parties' sentencing stipulation was not a Rule 11(e)(1)(C) agreement, but one pursuant to Rule 11(e)(1)(B). The distinction is an important one, as Rule 11(e)(1)(C) provides that the government will "agree that a specific sentence or

7

sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines . . . is or is not applicable," and that "[s]uch a plea agreement is binding on the court once it is accepted by the court." Rule 11(e)(1)(B), on the other hand, provides for a prosecutor's agreement to "recommend . . . a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines . . . is or is not applicable to the case." The latter provision is not binding on the court.

Rhodes argues that despite the fact that the plea agreement unambiguously cites Rule 11(e)(1)(B), it "stipulated" that a particular guideline applied to the case and therefore is more akin to a Rule 11(e)(1)(C) agreement, for which Rule 11(e)(4) would provide for the opportunity to withdraw the guilty plea once it was "rejected" by the district court. This argument is belied by the record evidence before us. Specifically, the parties' statements throughout the proceedings reveal that, unlike a Rule 11(e)(1)(C) agreement, the sentencing agreement was fully understood by Rhodes and the government as "not binding" upon the district court. Furthermore, Rhodes affirmed his understanding, when specifically asked by the district court, that if the district court rejected the sentencing "recommendation" in the plea agreement, he would not be allowed to withdraw his plea. Furthermore, the text of the agreement itself explicitly stated that Rhodes would not be allowed to withdraw his guilty plea if the district court chose a higher

guidelines range than he expected.

We find no basis whatsoever in the record of this case for concluding that the true character of the parties' sentencing agreement converted it from a Rule 11(e)(1)(B) agreement to one under Rule 11(e)(1)(C). Consequently, we conclude that the parties' sentencing agreement was not binding on the court, and rejection thereof did not trigger the district court's obligation under Rule 11(e)(4) to offer Rhodes an opportunity to withdraw his guilty plea. Accordingly, we also find that the district court did not plainly err in failing to allow Rhodes an opportunity to withdraw his guilty plea.

*B. Application of U.S.S.G. § 2A3.1*

Rhodes next argues that the district court erred in applying Section 2A3.1 to the offense for which he was convicted, that is, interstate travel with the intent to engage in a sexual act with a juvenile, 18 U.S.C. § 2423(b). We review the district court's legal interpretation of the sentencing guidelines *de novo*. See United States v. Cho, 136 F.3d 982, 983 (5th Cir. 1998).

Rhodes's contention is that Section 2A3.1 applies to the actual or attempted commission of an aggravated sexual abuse, and that his conduct did not amount to criminal attempt. Notwithstanding the fact that Appendix A of the Sentencing Guidelines directs district courts to §§ 2A3.1, 2A3.2 and 2A3.3 for violations of 18 U.S.C. § 2423(b), his offense of conviction,

9

Rhodes argues that such an application in "traveler sting" cases subverts the real purpose of the guidelines and authorizes punishment for crimes impossible to actually commit because there is only a virtual victim. Rhodes argues that Section 2G1.1, agreed to by the parties, is the applicable guideline provision.

The district court determined, based upon a recommendation by the probation officer in the PSR, that Section 2A3.1 should apply based upon the directive in Appendix A and based upon the Ninth Circuit's holding in United States v. Butler, 92 F.3d 960 (9th Cir. 1996), which the district court found to be factually indistinguishable. In Butler, the defendant answered an ad placed by an undercover police officer posing as a "mother," looking for someone to teach sexual matters to her children, aged 12, 10, and 7. Id. at 961. Butler traveled interstate, from Washington to Oregon, spoke to the "mother" for 45 minutes about his plans for the children, and was arrested upon entering the hotel room where he expected to find the children. Id. Like Rhodes, Butler was convicted under 18 U.S.C. § 2423(b). The Ninth Circuit stated in Butler that "the fact that [Butler] was unable to complete the crime because the victims were fictitious is not the determining factor. Rather, [Butler]'s intent and conduct constitute attempted criminal sexual abuse of three young children." Id. at 963.

While we affirmed application of section 2G2.2, in United States v. Canada, 110 F.3d 260, 262-64 (5th Cir. 1997), a case involving an 18 U.S.C. § 2423(b) conviction for the defendant's

10

actions in traveling for the purpose of engaging in sexual acts with a purported 13-year-old and a simultaneous conviction under 18 U.S.C. § 2252(a)(4)(b) for possession of child pornography, we note that the application of Section 2G2.2 was selected based upon the child pornography charge. We did not hold in Canada that Section 2A3.1 cannot be applicable to convictions under 18 U.S.C. § 2423(b); and thus, Canada is not controlling precedent to guide our disposition today.

The government argues that, in addition to the reasoning offered by the Ninth Circuit in Butler, Section 2A3.1 was correctly applied because, under 18 U.S.C. § 2241(c), it is aggravated sexual abuse to travel across state lines with the intent to engage in sexual acts with children under 12 years of age.[2] Appendix A of the Sentencing Guidelines directs that violations of 18 U.S.C. § 2241(c) are punished as "criminal sexual abuse" under U.S.S.G. § 2A3.1. And here, Rhodes has stipulated that he "traveled to

---

[2]Section 2241(c) specifically defines aggravated sexual abuse as follows:

> With children.--Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) and (b) with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both. Id.

11

Dallas, Texas with the intention of engaging in sexual acts with a 10-year-old boy." The government argues that notwithstanding that Rhodes was not convicted of a § 2241(c) violation, he may nonetheless be sentenced based thereupon because the offense has been adequately established by Rhodes's own stipulation. See U.S.S.G. § 1B1.2(a) ("in the case of a plea agreement . . . containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline . . . most applicable to the stipulated offense."); see also United States v. Principe, 203 F.3d 849, 853 (5th Cir. 2000); United States v. Beard, 913 F.2d 193, 198 (5th Cir. 1990) ("if in a guilty plea a defendant stipulates to facts that establish a more serious offense than the offense of conviction, that person may be sentenced to the higher offense.").

Consequently, where as here, the defendant has pleaded guilty to violating 18 U.S.C. § 2423(b) but has also stipulated to facts which constitute aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c), we conclude that pursuant to U.S.S.G. § 1B1.2, he may likewise be sentenced for the offense of conviction by application of U.S.S.G. § 2A3.1.

## III. CONCLUSION

For all of the foregoing reasons, we find that the district court committed no reversible error, and accordingly, the judgment entered and the sentenced imposed by the district court are

12

**AFFIRMED.**