**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITES STATES OF AMERICA,

Plaintiff - Appellant,

v.

MANUEL MARES-MARTINEZ,

Defendant - Appellee.

No. 02-2246

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO
### (D.C. No. CR-00-344 BB)

On the briefs:[*]

Laura Fashing, Assistant United States Attorney, and David C. Iglesias, United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellant.

Charles Louis Roberts, El Paso, Texas, for Defendant-Appellee.

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

The government appeals from the sentence imposed upon Defendant Manuel Mares-Martinez. Charged in an 18 count indictment, Mr. Martinez was convicted on a guilty plea of conspiracy to bring in, transport and harbor unlawful aliens. 18 U.S.C. § 371, 8 U.S.C. §§ 1324(a)(1)(A)(i), (a)(1)(A)(ii), (a)(1)(A)(iii). In addition to smuggling several aliens from Mexico to the United States, he also arranged for a co-defendant to transport the aliens further into the interior of the United States. While en route with 21 aliens, the transport vehicle (a 1983 Chevrolet Suburban owned by Mr. Mares-Martinez) had a blowout, resulting in injuries to several passengers and one fatality.

At the change of plea hearing, the district judge accepted Mr. Mares-Martinez's guilty plea after informing him that part of the offense level would include an eight-level enhancement because one person died during the commission of the offense. I Aplt. App. 57, see also id. at 37 (plea agreement). At sentencing, however, a visiting district judge refused to apply the enhancement because Mr. Mares-Martinez was not the driver of the vehicle. In response to the probation officer's statement that the death was still part of the offense conduct, the district judge stated "Not in my judgment. Those eight points should not be given to him." Id. at 71. The government appeals, contending that the district court: (1) failed at sentencing to accept or reject the plea agreement before

departing from its terms; and (2) erred in not imposing an eight-level enhancement pursuant to U.S.S.G. § 2L1.1(b)(6) based upon the death of one of the unlawful aliens being transported. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), and we remand for resentencing.

Here, the government concedes that although the district judge at the change of plea hearing accepted the plea, he did not accept the plea agreement explicitly. See Fed. R. Crim. P. 11(c)(4).[2] It is not unusual for a district judge taking a plea to defer a decision on whether to accept a plea agreement when he knows that a different district judge will sentence the defendant or when a presentence report ("PSR") will be forthcoming. Fed. R. Crim. P. 11(c)(3)(A). The government seeks a remand so the district court may state whether it accepts or rejects the plea agreement. Rather than employ the harmless error standard of Fed. R. Crim. P. 11(h), we evaluate this claim for plain error because the government did not object when the district court furnished its advice to Mr. Mares-Martinez that it would not follow the plea agreement. See United States v. Rhodes, 253 F.3d 800, 804 (5th Cir. 2001).

Pursuant to Fed. R. Crim. P. 11(c)(5),[3] the district judge plainly told the

_____

[2] We use the current designations for Rule 11 which became effective after these proceedings.

[3] Fed. R. Crim. P. 11(c)(5) (2003) now provides:

**Rejecting a Plea Agreement.** If the court rejects a plea agreement

parties: "I don't take committed pleas. Is this a committed plea?" 1 Aplt. App. 71. The prosecutor responded it was. Id. Thereafter, the district court gave Mr. Mares-Martinez the opportunity to withdraw his plea: "You want to withdraw your plea and get another judge who won't give you the benefit of eight months?"[4] Id. Defendant responded through counsel, "No, Your Honor[,]" and the district judge stated "Of course not." Id. At that point, the government did not object. The district court clearly refused to accept the plea agreement and gave Mr. Mares-Martinez a chance to withdraw his plea. The government correctly notes that the other counts in the indictment were dismissed without prejudice by the district judge, well before the government moved for such a dismissal. Under the circumstances, however, the district court's failure to advise Mr. Mares-Martinez of the theoretical possibility that the case might be disposed of less favorably if the plea was not also withdrawn, Fed. R. Crim. P. 11(c)(5)(C),

---

containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
   (A) inform the parties that the court rejects the plea agreement;
   (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
   (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

[4] The district judge must have meant a sentence without an eight-level enhancement.

does not constitute plain error.

Turning to the second issue, the district judge raised the eight-level enhancement issue sua sponte, expressed his disagreement with the probation officer, and then stated that "[t]he Government will reserve its objection." 1 Aplt. App. 71; see also id. at 69 (district judge responding to Defendant's objection on another matter in similar fashion by stating in part: "[Y]ou will preserve your exception."). The government reminded the district court that this was a Fed. R. Crim. P. 11(c)(1)(C) plea, but apparently was not allowed to finish. 1 Aplt. App. 71. The government preserved its objections to the lack of an eight-level § 2L1.1(b)(6) enhancement, particularly considering that the probation officer advanced the same rationale now advanced on appeal. The district judge plainly had the argument before him. We review the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error, giving some deference to the district court's application of the guidelines to the facts. United States v. Brown, 314 F.3d 1216, 1222 (10th Cir.), cert. denied, 123 S. Ct. 1338 (2003).

The district judge erred in interpreting the Sentencing Guidelines in these circumstances. Except for the facts concerning whether Mr. Mares-Martinez was an organizer or leader, the facts as contained in the PSR are undisputed by him. 1 Aplt. App. 69. The district judge adopted the PSR in full. Id. at 70, 72-73.

There were 22 people in the vehicle and with the exception of the decedent's two-year old son, all were unlawful aliens. II Aplt. App. 77, ¶ 5.

> According to the passengers, at the time of the accident, Mr. Ruiz-Diaz [the driver] was holding a pager in his hand which was used to receive alerts about the status of the border patrol checkpoint on Highway 70. Several witnesses stated Mr. Ruiz-Diaz was driving erratically and appeared to be traveling at a high rate of speed.

Id.

Mr. Mares-Martinez first agreed to and then did not object to an enhancement under § 2L1.1(b)(5) for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." The commentary provides: "Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition)." U.S.S.G. § 2L1.1 cmt. n.6. Section 2L1.1(b)(6) then provides that "[i]f any person died or sustained bodily injury, increase the offense level according to the seriousness of the injury." Several cases have concluded that no additional intent beyond that found in § 2L1.1(b)(5) is required to apply § 2L1.1(b)(6). United States v. Garcia-Guerrero, 313 F.3d 892, 898 (5th Cir. 2002); United States v. Rodriguez-Cruz, 255 F.3d 1054, 1058-59 (9th Cir. 2001); United States v. Herrera-Rojas,

243 F.3d 1139, 1144 (9th Cir. 2001). In this circuit, we have applied the enhancement when the driver of a minivan containing 13 illegal aliens lost control and rolled the vehicle, resulting in serious injuries. United States v. Vargas-Herrera, 49 Fed. Appx. 204, 205, 2002 WL 31243553, at *1 (10th Cir. 2002) (unpublished) ("Here, it is undisputed that Vargas-Herrera was driving a vehicle with substantially more passengers than the rated capacity of the vehicle, and that the vehicle's rear seats and seatbelts had been removed."). We have upheld an upward departure to account for multiple deaths and injuries where the defendant lost control of a 1982 Dodge van overloaded with 16 unlawful aliens. United States v. Jose-Gonzalez, 291 F.3d 697, 699 (10th Cir. 2002).

We have not had occasion to determine whether an organizer or leader of a smuggling operation may be held responsible under §§ 2L1.1(b)(5) and (6) when he is not the driver. In Herrera-Rojas, the court spoke to a causation requirement when applying § 2L1.1(b)(6): "We assume . . . that for § (b)(6) to apply, the relevant death or injury must be causally connected to dangerous conditions created by the unlawful conduct, as it was in this case." 243 F.3d at 1144 n.1. Here, the PSR supports a causal connection between the death and injuries sustained by the passengers in this case and the Defendant's conduct. Mr. Mares-Martinez arranged for a vehicle that was substantially overloaded, and it certainly is not unforeseeable that the driver of the vehicle might be distracted by attempts

to avoid detection.  Moreover, this was the only evidence before the court.  Mr. Mares-Martinez, having agreed to the enhancement earlier, did not put on evidence in contradiction.  In fact, in a statement to the court, he expressed remorse, stating, "Unfortunately, Vans, S.U.V.'s, and other high profile vehicles are inherently dangerous, especially when proceeding at highway speeds and experiencing a blow-out."  II Aplt. App. 80.  Ignoring the fact that the crowded condition of the vehicle resulted in greater injury, Mr. Mares-Martinez also reminds us that this was his personal vehicle and the same fate could have happened to him and his family.  Id.  Regardless, the evidence supporting the eight-level enhancement is clear from the record.  Upon remand, the district court shall vacate the sentence and resentence in accordance with this opinion.

REMANDED with directions.