**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 7, 2011

No. 10-50922
Summary Calendar

Lyle W. Cayce
Clerk

JOSE MANUEL CAMPA GONZALEZ,

Plaintiff - Appellant

v.

NATIONAL INSURANCE CRIME BUREAU; PROGRESSIVE CASUALTY
INSURANCE CO,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:09-CV-323

Before JONES, Chief Judge, and SMITH and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Jose Manuel Campa Gonzalez ("Gonzalez") was

arrested and incarcerated for eleven days in Mexico for hawking a car that the

Mexican authorities erroneously believed was stolen. Gonzalez later filed suit

against the defendant-appellees National Insurance Crime Bureau ("NICB") and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50922

Progressive Casualty Insurance Co. ("Progressive"), claiming that they were legally liable for the actions of the Mexican police. While Gonzalez's arrest and imprisonment were traumatic and, on hindsight, unnecessary, we nevertheless agree with the district court that the appellees cannot be held liable for Gonzalez's suffering. We therefore AFFIRM.

## BACKGROUND

In 2005, a Cadillac Escalade was stolen in Queens, New York. Progressive insured the vehicle and compensated the owner for the loss; Progressive in turn took the vehicle's title. The NICB investigated the theft and found that the Escalade had been recovered in New Mexico. Progressive placed the Escalade for auction with Copart, an online auto auctioneer.

Gonzalez saw the Escalade on the Copart web site and decided to purchase it. Because he did not have a Copart purchasing license, he instructed one of his friends with a license to purchase the Escalade on his behalf. The friend won the auction, paid Copart a cashier's check and took title to the Escalade. The friend gave Gonzalez the Escalade and the relevant purchase documents, but Gonzalez never officially took title to the Escalade.

Although Gonzalez intended to use the Escalade as a family car, he discovered that the transfer document from Copart was stamped "for export only," and therefore, he could not register the car in his home of El Paso, Texas. In an effort to recoup his losses, Gonzalez took the Escalade across the border to Juarez, Mexico, where he attempted to sell it at a swap meet for cars. In doing so, Gonzalez attracted the attention of Mexican law enforcement officers, who ran a routine background check on the vehicle's VIN. The database on which the background check was conducted, however, apparently had not been updated in some time, and the Escalade was still on file (erroneously) as stolen. Even though Gonzalez presented the sales documents from Copart, the Mexican officials arrested him, and he was prosecuted in Juarez for possession of a stolen

2

No. 10-50922

vehicle. He spent approximately eleven days in jail before posting bond. The record is unclear as to whether Gonzalez was acquitted or convicted, or whether the charges were dismissed.

Meanwhile, in reliance on an NICB report, the American Consulate in Juarez requested that the Escalade be returned to the United States because it was stolen; Mexican authorities complied. A month or two after his arrest, Gonzalez went to an NICB office to retrieve the Escalade. The NICB agent with whom he met apparently became confused as to the Escalade's status as a stolen vehicle. She contacted her superiors and, after some discussion, apparently was told to hand over the Escalade to Gonzalez. However, before she could do so, Gonzalez became "overwhelmed" by the process, and he decided to leave empty-handed. Later, on July 25, 2007, Progressive notified the NICB by letter that the Escalade was no longer stolen at the time of Gonzalez's arrest.

By that point, however, Gonzalez claims he no longer wanted the vehicle; instead, he wanted compensation for the harm he suffered during his arrest and prosecution in Mexico. Gonzalez sued Progressive and the NICB in Texas state court, alleging a host of claims arising under Texas state law, including breach of contract, breach of warranty, fraud, defamation, malicious prosecution, negligence, and conversion. Defendants removed to federal court on the basis of diversity jurisdiction. Following discovery, the district court granted defendants' motions for summary judgment, and Gonzalez appealed.

This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, and we review a grant of summary judgment *de novo*, applying the same standards as the district court. *See Depree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009).

While the district court granted the appellees summary judgment on Gonzalez's seven causes of action, Gonzalez discusses only four causes of action on appeal: malicious prosecution, conversion, negligence and fraud. Appellees suggest that the other claims on which the trial court granted summary

3

No. 10-50922

judgment – defamation, breach of warranty, and breach of contract – are waived. We agree. *See* Fed. R. App. P. 28(a)(9)(A); *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000). We discuss each non-waived issue in turn.

## I.   Malicious Prosecution

Gonzalez argues that the NICB and Progressive caused his arrest and incarceration in Mexico because "but for [their] actions the prosecution would not have occurred." *See Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 293 (Tex. 1994). He argues further that his prosecution in Mexico was "clearly foreseeable" to Progressive and the NICB, and their claims of ignorance are unfounded.

Although the actions of Progressive and the NICB might have been a cause-in-fact of Gonzalez's arrest, more is required to hold them liable for malicious prosecution. As the district court correctly noted, a malicious prosecution claim under Texas law requires a showing of, among other things, "the absence of probable cause for the proceedings" and "malice in filing the charge." *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997). That the Mexican officials' information turned out to be outdated does not defeat the fact that they had probable cause at the time of the arrest, in part because Gonzalez had no documents proving his title to the vehicle. Moreover, Gonzalez offered no evidence that Progressive or the NICB acted with "malice" as the law requires. Gonzalez's claim for malicious prosecution cannot survive summary judgment.

## II.   Conversion

Gonzalez asserts that Progressive and the NICB wrongly exercised dominion and control over the Escalade, and that as a result, he is entitled to recover for conversion. We disagree. First, the evidence shows that Progressive has not exercised control over the Escalade since it was sold through the Copart auction. There is also no evidence that the NICB obtained the Escalade on

4

No. 10-50922

behalf of Progressive after Gonzalez's arrest.   Progressive is not liable for conversion.

NICB admittedly retrieved the vehicle after Gonzalez's arrest, but the NICB has never refused to return it to Gonzalez.  Gonzalez did not wait to obtain the vehicle from the NICB office and indicated in his deposition that he no longer wants the Escalade.   Thus, Gonzalez has not shown that the NICB took "unauthorized and unlawful exercise of dominion and control" over the Escalade "to the exclusion of, or inconsistent with, [Gonzalez's] rights."  *See Almance v. Shipley Bros., Inc.*, 247 S.W.3d 252, 254 (Tex. App. 2007).

## III.   Negligence

Gonzalez argues generally that the NICB and Progressive were negligent in failing to disclose the stolen vehicle report for the Escalade at its auction sale. Gonzalez believes further that Progressive and the NICB should have, among other things, reported to other government agencies that the vehicle had been recovered.

To succeed on a negligence claim, Gonzalez must show that Progressive and the NICB owed him a legal duty, that they breached that duty, and that he suffered damages actually and proximately caused by the breach.  *See, e.g.*, *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Gonzalez cannot satisfy these elements because he has not demonstrated that Progressive or the NICB owed him any duty.  The record indicates that the National Crime Information Center – not the NICB – may have been the ultimate source of the report that led the Mexican authorities to believe the Escalade was stolen.   Neither Progressive nor NICB had any legal duty to prevent a law enforcement agency from mistakenly arresting Gonzalez.  Apart from malicious prosecution or defamation, which are intentional torts, Texas does not recognize a negligence claim for arrest under these circumstances. Gonzalez cannot prevail on a negligence claim against these two appellees.

5

No. 10-50922

## IV. Fraud

Finally, Gonzalez claims that Progressive and the NICB committed fraud in failing to disclose to Gonzalez that the Escalade had been stolen. A claim of fraud for failing to disclose information requires a plaintiff to show that the defendant had a duty to disclose to him the information at issue. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Generally, such a duty arises pursuant to a fiduciary relationship. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). The district court concluded correctly that the sale of the vehicle from Progressive to Gonzalez's friend occurred in an arms-length transaction through an auctioneer; no fiduciary relationship existed. Gonzalez has not explained why NICB had a duty to inform an auction winner with whom it had no dealings that a vehicle had been stolen. NICB made no false disclosures. Thus, Gonzalez cannot demonstrate that either Progressive or the NICB defrauded him.

## CONCLUSION

Gonzalez's arrest and incarceration in Mexico undoubtedly caused him great harm, and while we understand the desire to be made whole, the law does not allow Progressive and the NICB to be held liable on these facts. The judgment of the district court is therefore **AFFIRMED.**

6