**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TEODULFO CARDENA-GARCIA,

Defendant-Appellant.

No. 02-1189

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CRISTOBAL GARCIA-SUAREZ,

Defendant-Appellant.

No. 02-1199

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 01-CR-124-B)**

---

Submitted on the briefs:

Richard J. Banta, Denver, Colorado, and Richard D. Irvin, Boulder, Colorado, for Defendants-Appellants.

John W. Suthers, United States Attorney and Andrew A. Vogt, Assistant United States Attorney, Denver, Colorado for Plaintiff-Appellee.

Before **SEYMOUR, MURPHY,** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

This appeal calls upon us to consider the propriety of the cumulative application of sentencing enhancements. Appellants Teodulfo Cardena-Garcia and Cristobal Garcia-Suarez jointly[1] appeal from the district court's enhancement of their sentences under both United States Sentencing Guidelines (U.S.S.G.) § 2L1.1(b)(5) and § 2L1.1(b)(6) (2001). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.[2]

After illegally entering the United States from Mexico, and assisting others in doing so, Appellants purchased a van in Phoenix, Arizona, to transport seventeen illegal aliens to Chicago, Illinois. Including themselves, Appellants crammed nineteen people into a van designed to hold only seven passengers. En route to Chicago, with Mr. Cardena-Garcia driving, the van encountered poor

---

[1] On August 9, 2002, we consolidated appeals 02-1189 and 02-1199.

[2] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

road and weather conditions on Interstate 76, approximately thirty-three miles east of Sterling, Colorado. In an area with a posted seventy-five miles per hour speed limit the van was traveling an estimated ten to fifteen miles per hour when a semi truck traveling about sixty to sixty-five miles per hour crested a small hill and collided with it from the rear. Six of the illegal immigrants were killed and others were seriously injured.

After investigation the Colorado State Patrol allocated sixty percent of the fault for the crash to the driver of the semi truck, and forty percent to Mr. Cardena-Garcia.[3] The truck driver pled guilty in state court to careless driving resulting in death. Neither Appellant was charged in state court, but both pled guilty to and were convicted of transporting aliens unlawfully present in the United States for financial gain resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (A)(v)(II), (B)(i) and (B)(iv).

Prior to and at sentencing Appellants objected to enhancements under both U.S.S.G. § 2L1.1(b)(5) and (b)(6). The district court rejected their objections and applied the enhancements. It increased their offense level by three (resulting in

---

[3] During sentencing the district court noted, in addition to overcrowding and the speed of the van, a report by a state patrol technician indicated the rear leaf spring assemblies of the van were modified with lift blocks to support more weight, the van's left rear brake pads were worn to below one-eighth inch, the brake wheel cylinder was leaking fluid, and the right rear brake pads were worn, causing metal-on-metal contact.

an offense level of eighteen)[4] for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another, U.S.S.G. § 2L1.1(b)(5), and imposed an additional eight-level increase because deaths occurred during the commission of the offense, U.S.S.G. § 2L1.1(b)(6)(4). Mr. Cardena-Garcia was sentenced to fifty-seven months imprisonment, and Mr. Garcia-Suarez was sentenced to sixty-eight months.[5]

When considering challenges to enhancements at sentencing, "[w]e review the district court's factual findings . . . under the clearly erroneous standard, and review de novo the district court's legal interpretation of the Sentencing Guidelines." *United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir. 2003) (quotation marks and citation omitted), *cert. denied,* 124 S. Ct. 209 (2003). The implicated sentencing guidelines provide:

> (5) If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18.

> (6) If any person died or sustained bodily injury, increase the offense level according to the seriousness of the injury: . . . (4) Death add 8 levels.

U.S.S.G. § 2L1.1(b)(5) and (b)(6).

---

[4] The guideline calls for a two-level increase, but to a minimum level of 18.

[5] Mr. Garcia-Suarez received an additional two-level enhancement because he was the leader or organizer of the criminal activity. U.S.S.G. § 3B1.1(c).

Before we can get to the core of this appeal — cumulative application of guideline enhancements — we must address a threshold issue. Appellants argue § 2L1.1(b)(6) requires causation, relying on a footnote in *United States v. Herrera-Rojas*, 243 F.3d 1139, 1144 n.1 (9th Cir. 2001), which states "[w]e assume, however, that for § (b)(6) to apply, the relevant death or injury must be causally connected to dangerous conditions created by the unlawful conduct." They claim the § 2L1.1(b)(6) enhancements were inappropriate because the six deaths and other injuries were not the proximate and direct result of foreseeable harm created by their conduct. Appellants read too much into the footnote. In any event, we disagree that proof of direct or proximate cause is required to impose a § 2L1.1(b)(6) enhancement.

Guideline § 2L1.1(b)(6) covers a broad range of conduct made criminal by 8 U.S.C. § 1324(a). With respect to the subset of conduct specifically applicable here, transporting aliens unlawfully present in the United States for financial gain **resulting in death**, the guideline language is clear and plain — if a death resulted from the transportation, an eight-level enhancement is required. § 2L1.1(b)(6)(4). Resulting in death and causing death are not equivalents. The guideline contains no causation requirement and we have no license to impose one. Moreover, it is logical, perhaps tautological, to note that a plea of guilty encompasses all of the elements of the offense. When resulting death is such an element, requiring proof

of even more for sentencing purposes would be a striking anomaly. Appellants' arguments might wash had they pled to a lesser offense and § 2L1.1(b)(6)(4) was being considered as a relevant conduct enhancement. Even then, the causal link would need not be that commonly associated with tort negligence — proximate or direct cause. For example, sufficient "cause" exists if the defendant simply arranged for the overcrowded conditions in the van, as it is foreseeable the driver would be distracted in an attempt to avoid detection. *United States v. Mares-Martinez*, 329 F.3d 1204, 1207 (10th Cir. 2003). A sufficient nexus would exist if the death or injury was reasonably foreseeable and Appellants' conduct was a contributing factor. Although not required, a causal nexus is clearly present here.

Appellants were partly responsible for the collision and largely responsible for the deaths and injuries. The State Patrol attributed forty percent of the fault for the collision to Mr. Cardena-Garcia, the van driver. The district court noted the van's slow speed amounted to reckless conduct, which clearly played a factor in the collision. Both Appellants are responsible for the gross overcrowding and both are charged with knowledge of the alterations to and poor mechanical condition of the van.[6] That knowledge is particularly attributed to Mr. Garcia-

---

[6] There is no indication in the record as to whether or not the mechanical condition of the van directly contributed to the collision. However, the alterations to the van to support more weight, and therefore more passengers, certainly contributed to the deaths and injuries. And the mechanical condition of the van is indicative of a general unconcern for the safety of its occupants.

Suarez because of his position as leader or organizer of the criminal activity.[7]  In sum, and regardless of potential civil liability under Colorado comparative fault law, the conduct of each Appellant clearly contributed to the serious consequences of the collision, if not the collision itself.  Severe injuries, and even death, were reasonably foreseeable; the Appellants' acts revealed their indifference to the risks.

Having concluded that § 2L1.1(b)(6)(4) requires an enhancement in this case, we turn to the core issue of guideline interrelationships.  Appellants concede the district court properly applied U.S.S.G. § 2L1.1(b)(5) (because the passengers were transported in a reckless manner).[8]  But they argue the application of *both* § 2L1.1(b)(5), conduct enhancement, and (b)(6), outcome enhancement, constituted impermissible double counting because there was only one act — the overcrowding of the van.  We see it differently.[9]

---

[7] Since Mr. Garcia-Suarez's personal responsibility is palpable, it is not necessary to decide if, because of his leadership role, the actions of the van driver should also be attributed to him.

[8] Application note 6 to U.S.S.G. § 2L1.1(b)(5) applies reckless conduct to a wide variety of behavior, including "carrying substantially more passengers than the rated capacity of a motor vehicle . . . ."

[9] We recognize the double counting argument made by Appellants is not the one we addressed in *United States v. Alessandroni*, 982 F.2d 419 (10th Cir. 1992). There, we decided a prior criminal conviction could be used in determining both the appropriate criminal history level and offense level. *Id.* at 423.  Here, the same circumstances resulted in separate offense level enhancements.

Impermissible double counting "occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." *United States v. Fisher*, 132 F.3d 1327, 1329 (10th Cir. 1997) (quotation marks and citations omitted). However, enhancements under § 2L1.1(b)(5) and (b)(6) are not of that ilk. *Herrera-Rojas*, 243 F.3d at 1144. Specifically, § 2L1.1(b)(5) allows for an enhancement based upon "the defendant's intentional or reckless ***conduct***, with no consideration of the outcome;" whereas § 2L1.1(b)(6) provides for an enhancement based upon the "***outcome*** . . . with no consideration of the defendant's intentional or reckless conduct." *Id*. (emphasis in original).

In this regard, we agree with the Ninth Circuit. The application of both § 2L1.1(b)(5) and (b)(6) does not amount to impermissible double counting because each subsection focuses on separate and distinct considerations — conduct and outcome.[10] The same acts may be enhancing *conduct*, e.g., recklessly creating a

---

[10] Although we have not previously and specifically addressed the double counting argument presented here, at least one other case involved enhancements under both § 2L1.1(b)(5) and (b)(6). *United States v. Jose-Gonzalez*, 291 F.3d 697 (10th Cir. 2002). In that case we allowed an upward departure to account for the number of deaths resulting from alien smuggling, even though enhancements had also been given under both §§ (b)(5) and (b)(6). *Id.* at 702-03. That lesson ought not go unnoticed — an upward departure might also have been appropriate here.

substantial *risk* of death or serious bodily injury to another under § 2L1.1(b)(5), even though they also contributed to the *outcome* of death or serious bodily injury under § 2L1.1(b)(6).  *Herrera-Rojas*, 243 F.3d at 1144-45.  As previously discussed, an outcome enhancement is **required** because of the death and serious injuries, irrespective of fault.  § 2L1.1(b)(6).  And Appellants' conduct, which the district court identified as the overcrowding of the van and the slow rate of speed, was (as Appellants admit) an appropriate enhancement under § 2L1.1(b)(5).  Any appearance of overlap is merely superficial; each enhancement independently serves a distinctly different guideline purpose and imposing both was proper.

We **AFFIRM** the sentencing decision of the district court.