[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12125
Non-Argument Calendar

_____

D. C. Docket No. 05-10028-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXANDER GIL RODRIGUEZ,

Defendant-Appellant.

_____

No. 06-12126
Non-Argument Calendar

_____

D. C. Docket No. 05-10028-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS MANUEL TABOADA-CABRERA,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(November 1, 2006)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Alexander Gil Rodriguez and Luis Manuel

Taboada-Cabrera (collectively "defendants") challenge their 120-month sentences

imposed after they pled guilty to conspiracy to encourage and induce aliens to

come to and enter the United States unlawfully, in violation of 8 U.S.C.

§ 1324(a)(1)(A)(v)(I).  After review, we affirm.

## I.  BACKGROUND

**A.     Offense Conduct**

After receiving a tip that a "go-fast" boat had departed from Cuba for the

United States, the United States Coast Guard ("USCG") initiated a search and

located a "go-fast" boat, a thirty-three-foot fishing vessel, traveling without

navigational lights.  The USCG launched a smaller boat to intercept the go-fast

boat.  However, the go-fast boat disregarded all signals to stop and tried to elude

the USCG by traveling at a high rate of speed and on a "zigzag" course. The USCG deployed an entangling device, which hindered the go-fast boat and eventually caused it to come to a stop.

After the go-fast boat stopped, many people stood up, causing a shift in weight and the capsizing of the go-fast boat. All the occupants of the boat were ejected into the water. The USCG began rescue efforts. However, one six-year-old boy drowned after becoming trapped under the capsized go-fast boat. The USCG discovered that a total of thirty-one Cuban nationals had been on board the go-fast boat, including the deceased child. Twenty-nine of the individuals had not received prior official authorization to enter the United States. The two remaining individuals, the defendants in this case, previously had been paroled into the United States.

In a subsequent interview, the parents of the deceased child stated that the defendants had picked them up on the Cuban coastline. The parents also said that the passengers of the go-fast boat pled with the defendants to stop while they were being pursued.

B.    Sentencing

The presentence investigation reports ("PSI") recounted the facts of the defendants' smuggling offense detailed above. In addition, the PSI recommended,

inter alia, the following increases in the defendants' base offense levels: (1) an increase to 18, pursuant to U.S.S.G. § 2L1.1(b)(5), because the go-fast boat had been overloaded with people, which caused a substantial risk of death or serious bodily injury; (2) an eight-level increase, pursuant to U.S.S.G. § 2L1.1(b)(6)(4), because a person had died; and (3) a two-level increase, pursuant to U.S.S.G. § 3C1.2, for recklessly creating a substantial risk of death or serious bodily injury during flight from a law enforcement officer. The defendants did not object to the PSI.

At the sentencing hearing, the district court confirmed that there were no objections to the PSI. With a total offense level of 25 and a criminal history category I, the defendants' advisory guidelines range was 57 to 71 months' imprisonment. Counsel for the defendants argued for a sentence at the low end of the guidelines range. The district court gave the parties notice that it was considering an upward departure from the guidelines range because of the death of the child and continued the hearing to allow the parties to file briefs.

At the continued sentencing hearing, the defendants argued that the district court should not depart from the advisory guidelines range because the child's death already had been taken into account in imposing the enhancement under § 2L1.1(b)(6)(4). The defendants also stated that the video recording taken by the

4

USCG during the defendants' capture showed the following: (1) the boat had stopped when the USCG deployed the entangling device; (2) the entangling device caused the boat to jerk backward and take on water; (3) the people on the go-fast boat shifted to the front of the boat, which caused the boat to capsize; (4) the people in the water screamed to the USCG crew to help a boy trapped under the boat; and (5) the USCG crew responded back in Spanish that they could not proceed with rescue efforts until they received orders to do so. The defendants then argued that the facts were not so egregious as to warrant a further increase in their sentences.

The district court questioned whether a thirty-month increase was sufficient for the death of a six-year-old child and stated that the age of the child who died should be considered in determining the sentence. The district court also noted that the passengers had pled with the defendants to stop and that there were thirty-one people on board a thirty-three-foot boat. During this discussion, the defendants admitted that the go-fast boat had been overcrowded. However, the defendants then suggested that the USCG's actions may have led to the child's death. When the district court expressed concern about the defendants' attempt to "shift responsibility" for the child's death to the USCG, the defendants' counsel stated, "Had [the defendants] not decided to do what they did, that little boy would be

5

most likely alive today. They understood that completely, and that's why they accepted responsibility."

In determining the defendants' sentences, the district court noted the guidelines calculations and the 18 U.S.C. § 3553(a) factors. The district court then stated that it found the guidelines calculation, which increased the defendants' sentences by only two and a half years for the death of the child, to be inappropriate. The district court stated that it also had considered the large number of people on board the go-fast boat and the dangerousness of engaging in high speed chases to both the aliens and the USCG crew. The district court stated that the increasing number of alien smuggling cases involving high speed chases suggested that a sentence above the guidelines range was needed to promote respect for the law and afford adequate deterrence. The district court then sentenced each defendant to 120 months' imprisonment. When asked by the district court, the defendants stated that they had no objection to the district court's findings of fact or the manner in which the sentence was pronounced.

After sentencing, the district court issued a sentencing order stating that it had imposed the 120-month sentences after "concluding that: (1) An eight level guideline enhancement does not adequately take into consideration the death of a six year old child; (2) the current guideline provides insufficient and inadequate

deterrence for this type of offense; and (3) the USCG was unnecessarily put at risk of property damage and personal injury in this high speed pursuit." United States v. Gil-Rodriguez, 424 F. Supp. 2d 1349, 1353-54 (S.D. Fla. 2006). The defendants filed this appeal.

## II. DISCUSSION

### A.    Calculation of the Guidelines Range

On appeal, the defendants argue that the district court improperly applied three guidelines enhancements in calculating their guidelines ranges. Although the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), rendered the guidelines advisory and established a reasonableness standard in imposing the ultimate sentence, the district court is still obligated to consult the guidelines and "calculate correctly the sentencing range prescribed by the Guidelines." United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Because the defendants failed to object to the district court's calculation of the guidelines, we review for plain error only. See United States v. Raad, 406 F.3d 1322, 1323 (11th Cir.), cert. denied, 126 S. Ct. 196 (2005). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id.

(quotation marks omitted). Furthermore, because the defendants did not object to the facts in the PSI, these facts are deemed admitted for sentencing purposes. United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).[1] We find no plain error.

1. U.S.S.G. § 2L1.1(b)(5)

Section 2L1.1(b)(5) provides for an increase in a defendant's base offense level by two levels or to level 18, whichever is greater, if the offense involved "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." The district court imposed this enhancement because the go-fast boat was "carrying substantially more passengers than its capacity." Gil-Rodriguez, 424 F. Supp. 2d at 1352.

The defendants argue that, because no evidence was presented as to the capacity of the boat, the district court did not have sufficient evidence to find that the boat was overcrowded.

The problem for the defendants is that they admitted at sentencing that the boat was overcrowded, as follows:

---

[1]On appeal, the defendants argue that they put certain facts in dispute during their plea colloquy. Any factual disputes raised during the plea hearing that were not raised at sentencing were lost. See Wade, 458 F.3d at 1277 (explaining that the failure to object to the PSI's factual allegations admits those facts for sentencing purposes and that the "failure to object to a district court's factual findings precludes the argument that there was error in them"). In any event, as explained above, the district court did not plainly err in its guidelines calculations.

8

THE COURT: I also note that there were 29 people on board, 29 aliens and the two defendants. So there were 31 people, and the boat was a 33-foot vessel.

MR. AMSTER: I believe so, Your Honor, yes.

THE COURT: So, it would be fair to say that the boat was overcrowded.

MR. AMSTER: Correct.

The defendants also did not dispute the PSI's factual allegations that the go-fast boat was only thirty-three-feet long, yet carried thirty-one people when it was intercepted. Therefore, the district court did not plainly err in finding that the go-fast boat was overcrowded.

2.    U.S.S.G. § 3C1.2

The district court increased the defendants' base offense levels by two levels because they had "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer . . . ." U.S.S.G. § 3C1.2 (emphasis supplied). The defendants argue that there was no evidence to support the district court's factual finding that they attempted to flee.

At their plea colloquy, the defendants maintained that they had not fled the USCG, but merely sped up to avoid being rammed. However, the defendants did not reassert this position in opposition to the PSI, which stated that the defendants tried to evade capture by traveling on a "zigzag course" at a high rate of speed.

9

Furthermore, at the sentencing hearing, defendants conceded that they had fled the USCG when their counsel stated, "There was a chase. It was a dangerous chase, no question." Accordingly, the district court did not plainly err in its finding that the defendants fled from law enforcement.[2]

### 3. U.S.S.G. § 2L1.1(b)(6)

The district court increased the defendants' offense levels by eight, pursuant to U.S.S.G. § 2L1.1(b)(6), because of the child's death. Section 2L1.1(b)(6) requires an eight-level increase when a person has died, as follows:

> If any person died or sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Death or Degree of Injury | Increase in Level |
|---|---|
| . . . . | |
| (4)    Death | add 8 levels |

U.S.S.G. § 2L1.1(b)(6)(4). The defendants argue that this enhancement was improper because the child did not die during the commission of the offense, but after the defendants had surrendered to the USCG.

Nothing in the language of § 2L1.1(b)(6) requires the death to have occurred

---

[2]In a footnote, the defendants argue that the commentary to U.S.S.G. § 2L1.1 proscribes a § 3C1.2 adjustment when the section (b)(5) increase is based on conduct related to fleeing from a law enforcement officer. The comment to § 2L1.1(b)(5) states in relevant part, "If subsection (b)(5) applies solely on the basis of conduct related to fleeing from a law enforcement officer, do not apply an adjustment from § 3C1.2 (Reckless Endangerment During Flight)." See U.S.S.G. § 2L1.1, cmt. n.6 (emphasis supplied). This commentary is inapplicable here because the conduct supporting the § 2L1.1(b)(5) enhancement was the overcrowding of the go-fast boat, not the fleeing from the USCG.

during the commission of the offense.  The defendants have not shown plain error in the district court's including this enhancement in the guidelines calculations.[3]

## B.    Reasonableness

Finally, the defendants assert that their 120-month sentences are unreasonable.  After Booker, a district court, in determining a reasonable sentence, must correctly calculate the advisory guidelines range and then consider the factors set forth in 18 U.S.C. § 3553(a).[4]  United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).

We review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors.  United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005).  "[T]he party who challenges the sentence bears the burden of establishing

---

[3]We note that there is a split in the circuit courts as to whether U.S.S.G. § 2L1.1(b)(6) requires the death or injury to have been proximately caused by the defendant's relevant conduct or merely that the defendant's relevant conduct was a contributing factor to the death or injury. Compare United States v. Flores-Flores, 356 F.3d 861, 862-63 (8th Cir. 2004) (requiring a causal connection between the death or injury and the dangerous conditions created by the defendant's unlawful conduct) with United States v. Cardena-Garcia, 362 F.3d 663, 665-66 (10th Cir. 2004) (rejecting a proximate cause requirement in favor of a showing that the death or injury was reasonably foreseeable and the defendant's conduct was a contributing factor).  We need not address this issue because, in this case, there was no plain error in the district court's imposing this enhancement under either causation test.

[4]The factors in 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

11

that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Talley, 431 F.3d at 788. The fact that the defendants received the statutory maximum term of imprisonment for their convictions does not necessarily make their sentences unreasonable. See, e.g., United States v. Eldick, 443 F.3d 783, 740 (11th Cir. 2006) (upholding as reasonable a statutory maximum sentence), cert. denied, __ S. Ct. __ (2006) (No. 06-5393).

Here, the defendants faced a properly calculated advisory guidelines range of 57 to 71 months' imprisonment. After hearing argument and considering the § 3553(a) factors, the district court concluded that a sentence within the guidelines range failed to adequately account for the death of a six-year-old child or the risk posed to the USCG crew by the high speed chase. The district court also concluded that a guidelines sentence would not adequately deter future alien smuggling ventures. Accordingly, the district court exercised its post-Booker discretion and imposed 120-month sentences, above the advisory guidelines range.

The district court's reasons for imposing the 120-month sentences reflect the nature and circumstances of the offenses and the need for the sentences to reflect the seriousness of the offense and to provide deterrence, all § 3553(a) factors. See 18 U.S.C. § 3553(a)(1), (2)(A) & (B). Although the defendants disagree with the district court's assessment of these factors, after reviewing the record, we cannot

12

say that their 120-month sentences were unreasonable.[5]

Based on a review of the record and the parties' briefs, we discern no reversible error in the defendants' 120-month sentences.

**AFFIRMED.**

---

[5]We also reject the defendants' argument that their sentences are so disproportionate as to violate the Eighth Amendment. See United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005) ("In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." (quotation marks omitted)).