BRISCOE, Circuit Judge,
dissenting.
I respectfully dissent. Unlike the majority, I am not convinced that the “results from” language of 21 U.S.C. § 841(b)(1)(E) unambiguously reveals Congress’s intent “to forgo a proximate-cause requirement” and impose strict liability on criminal defendants. Maj. Op. at 621. As a result, I am left with “substantial doubt that the jury” in Burkholder’s case “was fairly guided,” and I therefore would reverse the district court’s judgment and remand for a new trial. United States v. Banks, 761 F.3d 1163, 1185 (10th Cir.2014) (internal quotation marks omitted).
I
At issue in this appeal is. whether the district court properly instructed the jury regarding the necessary findings it had to make in order to convict Burkholder of violating 21 U.S.C. § 841(b)(1)(E), the penalty enhancement provision that was alleged in the indictment in this case. Section 841(b)(1)(E) provides, in pertinent part, as follows:
[A]ny person who violates subsection (a) of this section shall be sentenced as follows:
(E)(i) Except as provided in subpara-graphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term *622 of imprisonment of not more than 10 years and if death or serious bodily injury results from, the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years....
21 U.S.C. § 841(b)(1)(E)© (emphasis added).
“Because th[is] ‘death results’ enhancement increased the ....- maximum sentence[] to which [Burkholder] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.” Burrage v. United States, — U.S. —, 134 S.Ct. 881, 887, 187 L.Ed.2d 715 (2014). Generally speaking, that element requires the jury to find “death caused by (‘resulting from’) the use of th[e] drug” distributed by the defendant. Id. The more difficult question, and the one posed by Burk-holder in this appeal, is whether, as part of that finding, the jury must find that the “the victim’s death was a foreseeable result of the defendant’s drug-trafficking offense.” Id. In other words, did Congress intend for the “death results” provision of § 841(b)(1)(E) to require a showing of proximate cause, or did it instead intend to impose strict liability on a criminal defendant whose drug-trafficking offense results in death or bodily injury to someone else?
II
The Supreme Court granted certiorari in Burrage to address the very samé question regarding the identically-worded “death results” provision of § 841(b)(1)(C). The Court ultimately found it unnecessary to reach this issue because it concluded, as a preliminary matter, that the “death results” provision imposes an actual cause (but for) requirement and that the government’s evidence which proved only a “contributing cause” failed to satisfy that requirement. Despite not reaching the proximate cause issue, however, Burrage provides useful guideposts for our review in this case.
At the outset of its analysis, the Supreme Court in Burrage noted that “[t]he law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause.” Id. The Court explained that “[w]hen a crime requires ‘not merely conduct but also a specified result of conduct,’ a defendant generally may not be convicted unless his conduct is ‘both (1) the actual cause, and (2) the “legal” cause (often called the “proximate cause”) of the result.’” Id. (quoting 1 Wayne LaFave, Substantive Criminal Law, § 6.4(a) (2d ed.2003)). As noted, the Court resolved the question of whether the “death results” language includes an actual cause requirement, but left open the question we now face: whether this language also includes a legal cause requirement.
In resolving the actual cause issue, the Court in Burrage examined and interpreted precisely the same language we are now tasked with interpreting. In doing so, the Court noted that “[t]he Controlled Substances Act does not define the phrase ‘results from,’ ” and thus the Court began by “giv[ing] it its ordinary meaning.” Id. “A thing ‘results,’ ” the Court noted, “when it ‘[a]rise[s] as an effect, issue, or outcome from some action, process or design,’ ” Id. (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993)) (emphasis omitted).
But the Court did not stop there in interpreting the phrase’s meaning. It instead looked to the Model Penal Code’s “traditional understanding” of cause in the criminal setting, id. at 888, to the “common understanding of cause,” id., and to case law interpreting “phrases like ‘results from,’” id., in order to determine “the *623 traditional background principles ‘against which Congress legislated],’ ” id. at 889 (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. —, 133 S.Ct. 2517, 2525, 186 L.Ed.2d 503 (2013)). The Court also invoked the “rule of lenity” in rejecting the government’s proposed, and less demanding, interpretation of the “results from” language. Id. at 891. All of which suggests that the Court, in contrast to the majority in this case, viewed the '“results from” language as ambiguous in terms of addressing causation.[1]
Ill
Because we are faced in this appeal with interpreting the same statutory language (albeit in a different subsection of the same statute), I believe that we áre best served by following, if not bound to adhere to, the analytical framework outlined in Burrage. Treating the statutory language at issue as ambiguous, I therefore turn first, as did the Court in Burrage, to the traditional background principles against which 'Congress legislates, and which it must take into account, in imposing criminal liability.
One of the leading treatises on criminal law, and the one specifically cited in Bur-rage, states that where a criminal offense requires proof of “a specified result of conduct, the defendant’s conduct must be the ‘legal’ or ‘proximate’ cause of the result.” LaFave, supra, § 6.4.
The Model Penal Code, which the Court also referenced in Burrage, states, with regard to strict liability offenses: “[w]hen causing a,particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the actor’s conduct.”. Model Penal Code § 2.03(4) (Am. Law.Inst.2001). • In other words, the . Model Penal Code “provides that the causal element is not established” for strict liability offenses “unless the actual result is a probable consequence of the actor’s conduct, a minimal protection against the limitless extrapolation of liability without fault.” Id., cmt.
As for case law, the Supreme Court has long held that strict-liability criminal offenses are “generally disfavored,” and that “[c]ertainly far more than the simple omission of the .appropriate phrase from the statutory definition is necessary to justify dispensing with- an intent requirement.”[2] United States v. U.S. Gypsum Co., 438 U.S. 422, 438, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). Indeed, the Supreme. Court has stated that the simple “omission ... of intent [in a criminal statute], will not be construed as eliminating that element from *624 the crimes denounced,” and “instead Congress will be presumed to have legislated against the background of our traditional legal concepts which render intent a critical factor.” Id. at 437, 98 S.Ct. 2864. Consequently, the Supreme Court, “in keeping with the common-law tradition and with the general injunction that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity, has on a number of occasions reád a state-of-mind component into an offense even when the statutory definition did not in terms so provide.” Id.
The Supreme Court has also generally outlined “[t]he situations in which strict [criminal] liability may be imposed”:
(W)here a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not one taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent.
United States v. Freed, 401 U.S. 601, 613 n. 4, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring in the judgment) (quoting Holdridge v. United States, 282 F.2d 302, 310 (8th Cir.1960)).
As far as I can determine, the Supreme Court has not abandoned these principles. For example, in Paroline v. United States, — U.S. —, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014), the Supreme Court recently considered whether 18 U.S.C. § 2259(a), which states that a district court “shall order restitution for any offense” under Chapter 110 of Title 18 (covering a number of offenses involving the sexual exploitation of children), “limits restitution to those losses proximately caused by the defendants’ offense conduct.” 134 S.Ct. at 1719. In doing so, the Court noted generally, as it did in Burrage, that “[p]roximate cause is a standard aspect of causation in criminal law,” and it in turn stated that, “[g]iven proximate cause’s traditional role in causation analysis, [it] ha[d] more than once found a proximate-cause requirement built into a statute that did not expressly impose one.”[3] Id. at 1720; see Dean v. United States, 556 U.S. 568, 581, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009) (Stevens, J., dissenting) (“[a]bsent a clear indication that Congress intended to create a strict liability enhancement, courts should presume that a provision that mandates enhanced criminal penalties requires proof of intent.”).
Considering the bare language of § 841(b)(1)(E) in light of these principles, I am not persuaded that Congress clearly intended to" impose strict liability on a criminal defendant for any death resulting from his drug-trafficking offense. In other words, I believe that Congress would have had to say more in § 841(b)(1)(E) in order for us to reasonably conclude that it intended to abandon the background principles outlined above and impose strict criminal liability.[4]
*625 IV
The majority stakes its .conclusion, in part, on what it characterizes as the “plain language ... of the ‘results from’ language in § 841(b)(1)(E).” Maj. Op. at 621. But that characterization of the “results from” language is seemingly at" odds with the Supreme Court’s own characterization of the same language in Burrage. And, by stating that its interpretation is tethered to the “plain language” of the statute, the majority is most assuredly at odds with its decision to.then “[bjroaden [its] analytical lens” and look beyond the statutory language for other signs of Congressional intent.[5] Id. at 615. Generally, speaking, only ambiguity or the possibility of an odd result compels a court to look beyond the language of the statute it is interpreting. E.g., Zuni Pub. Sch. Dist. No. 89 v. Dep’t of Educ., 550 U.S. 81, 99, 127 S.Ct. 1534, 167 L.Ed.2d 449 (2007) (concluding that statutory language was susceptible to more than one meaning); Public Citizen v. Dep’t of Justice, 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that a court can look beyond the statutory language when plain meaning would “compel an odd result”).
In looking beyond the statutory' language, the majority curiously downplays the relevance of Burrage and ignores the above-cited'background sources in favor of other, less-persuasive sources. “For example, the majority cites to our decision in United States v. Cardena-Garcia, 362 F.3d 663, 666 (10th Cir.2004), and the Fifth Circuit’s more recent decision in United States v. Ramos-Delgado, 763 F.3d 398, 401 (5th Cir.2014). According to the majority, these two cases stand for the principle that the phrase “results from” imposes only but-for, and not proximate, causation. Notably, however, both of these cases dealt with language found in the United States Sentencing Guidelines, rather than the language of a statute imposing criminal liability. As a result, these two cases are inapposite.
The majority also (and again in conflict with its conclusion that the statutory language is unambiguous) makes much of the fact that “Congress included the language at issue here—viz., “death ... results from the use”—in 2008, after our sister *626 circuits uniformly had held that identical language in § 841(b)(1)(C) lacked a proa-mate-cause element.” Maj. Op. at 616 (emphasis in original). It is true that, prior to the enactment of § 841(b)(1)(E), every circuit court that considered the issue concluded that § 841(b)(1)(C) did not include a proximate cause requirement. But none .of these circuits considered the background principles outlined above, especially the rule of lenity or the Supreme Court’s tendency to view strict criminal liability offenses with disfavor. Nor did any of these circuits have the benefit of the Supreme Court’s analysis in Burrage. In any event, the majority does not, explain how Congress could reasonably have eschewed these long-established background principles,, particularly the ones expressly outlined in.Supreme Court precedent, in favor of a handful of lower-court decisions; And, finally, the majority’s conclusion reads too much into Congress’s decision to utilize the same phrasing in § 841(b)(1)(E) that it previously utilized in.§ 841(b)(1)(C). When Congress first selected the phrase “results from” for use in § 841(b)(1)(C), it had only the benefit of the background principles outlined above, all of which weigh against the imposition of strict criminal liability. And there were no cases or other authorities that I am aware of that would have led Congress to believe that the “results from” language it chose to use in § 841(b)(1)(C) unambiguously conveyed the intent to impose strict criminal liability. Consequently, I am not persuaded that we can fairly interpret Congress’s, use of that same phrase in § 841(b)(1)(E) as establishing its intent to. impose strict criminal liability. For, as we know, it is exceedingly common and entirely logical for Congress to use the same phrasing in different subsections of the same statute.[6]
V
There is another, entirely separate reason—existing Tenth Circuit precedent— that I believe compels us to conclude in this case that § 841(b)(1)(E) incorporates a proximate-cause requirement. In United States v. Woodlee, 136 F.3d 1399 (10th Cir.1998), two defendants challenged the sufficiency of evidence supporting their convictions for violently interfering with federally-protected activity, in violation of 18 U.S.C. § 245(b). That statute criminalizes, in pertinent part, the use of “force or threat of forcé [to] willfully injure[ ], intimidate[ ] 'or interfere[ ] with ... any person because of his race ... and because he is or has been ... enjoying the goods, services, facilities, privileges, advantages, or accommodations of any ... facility which serves the public.” 18 U.S.C. § 245(b). The statute’s penalty provision states that the defendant “shall be fined under this title, or imprisoned not more than one year, or both; and if bodily injury results ... shall be fined under this title, or imprisoned; not ’ more than ten years, or both.’’ Id. (emphasis added).
In considering and rejecting the defendants’ argument 'that there was insufficient evidence .for them to be penalized for the victim’s undisputed injuries, this court held that the statute required proof that the bodily injury was a foreseeable, rather than intentional, result of the rights-viólating conduct. Woodlee, 136 F.3d at 1405. At no point did this court even consider *627 the possibility that the statute might not require proof of foreseeability at all, i.e., that the statute, imposed strict liability .on a defendant for bodily .injury resulting from his conduct.[7]
Because there is no logical distinction between the statutory language at issue in Woodlee and the language of § 841(b)(1)(E) that we are now tasked with interpreting, I believe that we are bound by Woodlee to interpret § 841(b)(1)(E) as incorporating a proximate cause requirement. See United States v. Ensminger, 174 F.3d 1143, (10th Cir.1999) (holding that one panel of this court is bound by the precedent of an earlier panel absent en banc reconsideration or a superseding contrary decision of the Supreme Court). To conclude otherwise creates an intra-circuit conflict.
In an attempt to avoid this conflict, the majority suggests there is a “critical logical distinction between” the two cases because “the focus in Woodlee was on what is sufficient for the imposition of the penalty enhancement—not, as here, on what ‘ is necessary.” Maj. Op. at 620 (italics in original). The majority explains that “it does not ineluctably follow from Woodlee’s holding that foreseeability is a necessary causation standard, in addition to being a sufficient one.” Id. at 620 (italics in original),[8] “Indeed,” the majority asserts, “ Woodlee does not. necessarily preclude the possibility that a less-demanding causation standard—such as but-for causation— would also be sufficient to provide the basis for a felony under § 245(b).” Id. (italics in original).
The majority’s proffered distinction, however, cannot withstand' close scrutiny. When we review a sufficiency-of-the-evidence challenge, as this court did iri Wood-lee, we necessarily focus on the “essential elements of the crime” and, in turn, the minimum proof, necessary for conviction under that statute. Musacchio v. United States, — U.S. —, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In other words, and contrary to the majority’s suggestion, “[sjufficiency review essentially addresses whether ‘the government’s case was so lacking that it should not have even been submitted to the jury'.’ ” Id. (quoting Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (emphasis deleted)). As a result, the decision in *628 Woodlee necessarily means that a showing of foreseeability is an essential element of proof under § 245(b) and that any lesser-showing of proof by the government will fail.[9]
VI
For these reasons, I conclude that the district court failed to properly instruct the jury in Burkholder’s case regarding the essential elements of § 841(b)(1)(E). I therefore would reverse the judgment of the district court and remand the case to the district court for a new trial.

.' To be sure, the Court did not expressly declare the statutory language ambiguous. But neither-did the Court declare the language to be clear and unambiguous. And it invoked several recognized principles of statutory analysis in reaching its ultimate conclusion. Considering the Court’s analysis in its entirety, I am left to conclude that it considered the statutory language to bé ambiguous.

. Based apparently on my citation to U.S. Gypsum, the majority asserts that I have "mistakenly cast[ ] [their] holding ... as stripping away § 841’s mens rea requirement.” Maj. Op. at 612 n. 5. This is incorrect. The point of the citation and the related discussion is merely to outline the Supreme Court's general approach to statutes that impose sprict criminal liability. And, most importantly, the focus of my dissent, as with the majority opinion, is on the issue of causation. On that issue, we should acknowledge that the majority’s interpretation of § 841(b)(1)(E) effectively imposes strict liability “with respect to the injury or death of another arising out of the distribution of drugs.” United States v. Rebmann, 226 F.3d 521, 525 (6th Cir.2000), overruled on other grounds by United States v. Leachman, 309 F.3d 377, 385 n. 9 (6th Cir. 2002).

. The Court ultimately did not read a proximate cause requirement into § 2259(a) because it concluded that "the requirement of proximate cause [wa]s in the statute’s text.” 134 S.Ct. at 1720.

. The legislative history of § 841 is silent regarding the issue of causation. For example, a House Report (No. 99-845) that accompanied the Narcotics Penalties and Enforcement Act of 1986 stated, under the heading "PURPOSE OF THE LEGISLATION,” that ”[t]his bill substantially increases the penalties in the Controlled Substances Act and the Controlled Substances Import and Export Act.” The same report, under the ' heading "BACKGROUND,” stated simply that ”[t]he bill also *625 provides a special term of imprisonment if death or serious bodily injury results from violating the manufacture or distribution offenses.” Nowhere in the House Report (or any other available legislative history) did Congress discuss, in connection with the enhanced penalty provisions of § 841, the concepts of strict liability, proximate cause, or foreseeability of injury/death. - .. ■

. I agree with the majority “that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). But that does not explain the majority's “survey of federal criminal statutes” other than § 841. Maj. Op. at 615. And in the end, the other statutes cited by the majority really tell us nothing about the meaning of § 841.
As for my reliance on “extra-textual sources,” Maj. Op. at 615 n. 6, that is entirely consistent with my conclusion that the language of § 841(b)(1)(E) is ambiguous .with respect to the issue of proximate causation. See Milner v. Dept. of Navy, 562 U.S. 562, 572, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011) (“Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous [statutory] text.”); United States v. Hayes, 555 U.S. 415, 436, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (Roberts, C.J., dissenting) (concluding that where the statutory text “is ambiguous, the structure [of the statute] leans in the defendant’s favor, the purpose leans in the Government’s favor, and the legislative history does not amount to rnxich,” 'the “rule of lenity”' must be applied). It is also, as I have indicated, consistent with the Supreme Court’s analytical approach to the Very same statutory language.

. I agree with, the majority that "identical words used in different parts of the same act are intended [by Congress] to have the same meaning.” Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934). What I take issue with is the majoritys conclusion that Congress’s “decision to use identical language -in enacting § 841(b)(1)(E) Without codifying therein a proximate-cause requirement strongly suggests that Congress intentionally eschewed such a requirement.” Maj; Op. at 617.

. The Fifth Circuit reached a similar conclusion in United States v. Hayes, 589 F.2d 811 (5th Cir. 1979). There, the Fifth Circuit considered the elements necessary for a conviction under 18 U.S.C. § 242. Section 242 makes it a crime for a person, acting under color of state law, to deprive another person of their constitutional rights, or to subject another person to "different punishments, pains, or penalties, on account of such [person] being an alien, or by reason of his color, or race.” 18 U.S.C, § 242. Similar to the statute at issue in Woodlee, § 242 provides for an increased term .of imprisonment “if death results” from the defendant’s actions.. Id. The Fifth Circuit concluded that this sentence enhancement provision "requir[es] the additional element that death ensued as a 'proximate result of the accuseds’ willful-violation.of a victim’s defined rights.” 589 F.2d at 820 (emphasis added). The Fifth Circuit explained that “[a] fundamental principle of criminal law is that a person is held responsible for all consequences proximately caused by his criminal conduct” and ”[t]hus, where events are foreseeable and naturally result from one’s criminal conduct, the chain of legal causation is considered unbrokén and the perpetrator is held criminally responsible for the resulting harm.” Id. at 821.

, In. support, the majority,,cites, only to an .obscure, and I would submit irrelevant, law review article that discusses the concepts of symbolic logic. Maj. Op. at 620 n. 10.(citing Phillip M. Kannan, Symbolic Logic in Judicial Interpretation, 27 U. Mem. L.Rev. 85, 91 (1996)).

. I agree with the majority that "courts properly answer only the questions that the parties present to them and that are necessary for the resolution of the case at hand.” Maj. Op. at 620 n. 11. In Woodlee, the court was asked to, and did in fact, address the proof necessary to satisfy "the bodily injury element” of § 245(b). 136 F.3d at 1406. As noted, the court held that the victim’s "injury” had to be "a foreseeable result” of the defendants' criminal conduct. That holding does not, contrary to the majority’s suggestion, leave open the possibility that a lesser showing might somehow suffice.