# United States Court of Appeals
## For the First Circuit

No. 16-1320

UNITED STATES OF AMERICA,

Appellee,

v.

RAÚL ORTIZ-CARRASCO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Selya, Circuit Judge,
and McConnell, District Judge.[*]

Anita Hill Adames on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana
E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United
States Attorney, on brief for appellee.

July 10, 2017

[*]Of the District of Rhode Island, sitting by designation.

**SELYA**, **Circuit Judge**. Much of our law traces its origins to pre-Revolutionary times. The jurisprudence of the federal sentencing guidelines, though, is relatively young. Thus, we frequently encounter new questions of guideline interpretation. Defendant-appellant Raúl Ortiz-Carrasco attempts to serve up just such a question: whether a guideline provision that affords an enhancement for death occurring during the commission of an offense, see USSG §2L1.1(b)(7)(D), should be construed as including, sub silentio, a proximate cause requirement?

This question has splintered our sister circuits, but this court has not yet grappled with it. Although it might be tempting to stick our oar into these murky waters, we recently have warned that "courts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures." Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017). We heed this warning today and, given the district court's supportable factfinding, hold that, regardless of whether or to what extent section 2L1.1(b)(7)(D) incorporates a causation requirement, the district court did not err in applying the enhancement. Accordingly, we affirm the sentence imposed.

## I. BACKGROUND

We glean the facts from the unchallenged portions of the presentence investigation report (PSI Report) and the transcripts

of the multiple sentencing hearings.  See United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).  In June of 2014, the defendant and a confederate, Rando Bautista-Caraballo (Bautista), became part of a plot to smuggle migrants from the Dominican Republic into the United States.  On June 22, the defendant navigated a yola (a small boat, commonly used for fishing) to the shores of the Dominican Republic.  Once there, he joined forces with Bautista and took 20 undocumented Haitian migrants aboard.  The yola then set out for Mona Island, Puerto Rico; Bautista and the defendant alternated as helmsmen.

With 22 persons aboard, the yola was severely overloaded and — to make a bad situation worse — it carried no life jackets or other safety equipment.  The conditions of the voyage portended significant risks: the vessel would be traveling into the night in rough seas, with waves up to a foot and swells up to six feet. Heedless of these dangers, Bautista and the defendant pressed onward.

A Coast Guard helicopter spotted the yola mid-way through the voyage (when the craft was 12 nautical miles from the Dominican Republic and approximately 23 nautical miles from Mona Island).  Noticing the helicopter, Bautista and the defendant reversed course and headed back toward the Dominican Republic. The helicopter, later supplanted by a Border Patrol airplane, kept

the yola under aerial surveillance until a Coast Guard cutter arrived. By then, it was nearly dark and the yola was stopped (with its engine off).

The Coast Guard sent out a boarding party. As the Coast Guard launch neared the yola, someone aboard the yola cried out that the boat was taking on water. Several of the passengers leaped to their feet, and the yola capsized. The two smugglers and 19 of the migrants were rescued, but the remaining migrant (Georges Yvon) drowned.

The government did not take this botched alien-smuggling operation lightly. Following some preliminary skirmishing (not relevant here), the defendant waived indictment and pleaded guilty to an information that charged him with unlawfully attempting to bring aliens into the United States at a place other than a designated point of entry. See 8 U.S.C. § 1324(a)(1)(A)(i). The final version of the PSI Report recommended a ten-level enhancement because a person had perished during the commission of the offense of conviction. See USSG §2L1.1(b)(7)(D) (authorizing such an enhancement "[i]f any person died" during the commission of the offense). The defendant's total offense level (26), combined with his criminal history category (II), yielded a guideline sentencing range (GSR) of 70-87 months.

A series of sentencing hearings followed, primarily directed to the appropriateness of the ten-level enhancement. At

the first two hearings, the court took testimony from a Coast Guard officer, the defendant, and Bautista, and reviewed videotapes and photographs.[1]  The government argued that the language of section 2L1.1(b)(7)(D) should be taken literally and, therefore, applied to the offense of conviction.  The defendant argued that section 2L1.1(b)(7)(D) required a showing of causation, that the government had not proven that he caused Yvon's death, and as a result, that the enhancement was inappropriate in his case.

Prior to the third (and final) sentencing hearing, the district court filed a closely reasoned rescript, in which it concluded that the ten-level enhancement applied.  The court found that, regardless of whether section 2L1.1(b)(7)(D) demanded a showing of causation, the enhancement fit the defendant's case.

When the district court convened the final sentencing hearing, the defendant sought reconsideration of the earlier ruling.  Upon reconsideration, the court again ruled that the defendant was subject to the enhancement.  The court then adopted the recommended GSR and imposed a downwardly variant sentence of 57 months' imprisonment.  This timely appeal followed.

---

[1] Bautista pleaded guilty to a similar charge, and two of the three sentencing hearings involved both the defendant and Bautista.  The two men were sentenced separately, though, and Bautista is not a party to this appeal.  Consequently, we eschew any further reference to his sentencing.

## II.  ANALYSIS

This is a rifle-shot appeal: the defendant challenges only the application of the ten-level enhancement.  Inasmuch as this challenge was preserved below, we review the sentencing court's "interpretation and application of the sentencing guidelines" de novo, the court's "factfinding for clear error," and its "judgment calls for abuse of discretion."  United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015).  In conducting this tamisage, we keep in mind that facts found by a sentencing court must be supported by a preponderance of the evidence.  See United States v. Cordero, 42 F.3d 697, 702 (1st Cir. 1994).

As postured by the parties, this appeal revolves around the due interpretation of section 2L1.1(b)(7)(D).  The courts of appeals have expressed widely divergent views about the type of causal connection, if any, that is necessary to trigger an enhancement under section 2L1.1(b)(7)(D).  See United States v. De La Cruz-García, 842 F.3d 1, 2 (1st Cir. 2016) (noting circuit split and collecting cases).  To illustrate:

- The Tenth Circuit is at one end of the gamut.  It has observed that the text of section 2L1.1(b)(7)(D) "contains no causation requirement" and, thus, courts "have no license to

impose one." United States v. Cardena-Garcia, 362 F.3d 663, 666 (10th Cir. 2004).[2]

- The Fifth Circuit is at a mid-way point along the gamut. It acknowledges that the text of section 2L1.1(b)(7)(D) is bereft of any explicit causation requirement, but it reads that guideline provision in conjunction with USSG §1B1.3(a)(3), thereby implying a causation requirement. See United States v. Ramos-Delgado, 763 F.3d 398, 401-02 (5th Cir. 2014).[3] Consequently, the Fifth Circuit has concluded that section 2L1.1(b)(7)(D) requires at least but-for causation. See id.

- The Eighth Circuit is at the other end of the gamut. It has adopted a standard that bears a family resemblance to a proximate cause standard. Under the Eighth Circuit's formulation, the inquiry focuses on whether the death was

---

[2] The court, however, added a caveat. It went on to say that when death is not an element of the underlying offense and section 2L1.1(b)(7)(D) is applied merely as a relevant conduct enhancement, it "might" be appropriate to consider whether the death was "reasonably foreseeable" and the defendant's "conduct was a contributing factor." Cardena-Garcia, 362 F.3d at 666.

[3] USSG §1B1.3(a)(3) describes the "Relevant Conduct" that a sentencing court may consider when calculating a defendant's GSR. Such conduct in this context includes a defendant's "acts and omissions," USSG §1B1.3(a)(1)(A), as well as "all harm that resulted from [those] acts and omissions," id. §1B1.3(a)(3). The Fifth Circuit has reasoned that the phrase "'resulted from' imposes a requirement of actual or but-for causation" in connection with section 2L1.1(b)(7)(D). Ramos-Delgado, 763 F.3d at 401.

"causally connected to the dangerous conditions created by [the defendant's] unlawful conduct." United States v. Flores-Flores, 356 F.3d 861, 863 (8th Cir. 2004).

- The Eleventh Circuit is in somewhat the same place. It has embraced a standard reminiscent of the Eighth Circuit's standard, but which goes a step further. The inquiry focuses on foreseeability, that is, whether it was "reasonably foreseeable . . . that [the defendant's] actions or the actions of any other member of [his criminal] operation could create the sort of dangerous circumstances" likely to result in death. United States v. Zaldivar, 615 F.3d 1346, 1350-51 (11th Cir. 2010).

Against this chiaroscuro backdrop, the government, presumably because of uncertainty about exactly where the Tenth Circuit stands, see supra note 2, exhorts us to follow the Fifth Circuit's lead and adopt a but-for standard. For his part, the defendant exhorts us to read section 2L1.1(b)(7)(D) more grudgingly and incorporate a "proximate cause" standard, which — in context — appears to be an argument in favor of adoption of the Eighth Circuit's "causally connected" standard.[4]

---

[4] To the extent that the defendant is attempting to advocate for the adoption of some other standard, that attempt is underdeveloped and, thus, not properly before us. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

- 8 -

This compendium of dueling decisions and the parties' conflicting views present an interesting question — a question that this court has not yet answered.  Such a question would pique the interests of a legal scholar, but judges — unlike academicians — are not at liberty to scratch every intellectual itch.  As we explain below, the enhancement is appropriate in this case under any of the myriad interpretations of section 2L1.1(b)(7)(D); and where, as here, the question that the parties present can safely be left for another day, a court should not hurry to answer it.

We need not tarry over the Tenth Circuit's rule, even if we take as a given that court's express statement that no showing of causation is required.  In that court's view, the enhancement is proper so long as a death occurred during the commission of the offense.  See Cardena-Garcia, 362 F.3d at 666.  In this instance, the defendant does not dispute that Yvon died during the commission of the offense.

We turn next to the government's proposed but-for standard.  An action is a but-for cause of a harm if "'the harm would not have occurred' in the absence of . . . the defendant's conduct."  Burrage v. United States, 134 S. Ct. 881, 887-88 (2014) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2525 (2013)).  But-for cause is "the minimum requirement for a finding of causation."  Id. at 888 (citation omitted).

It is nose-on-the-face plain that the defendant's actions were, at the very least, a but-for cause of Yvon's demise. Had the defendant not embarked on a voyage in an overloaded yola, traveling in rough seas and in the dark of night without a soupçon of safety equipment aboard, Yvon would not have drowned. No more is exigible to satisfy the minimalistic requirements needed to establish but-for causation.

In an ill-conceived effort to blunt the force of this reasoning, the defendant tries to shift the blame to the Coast Guard. He protests that the yola began taking on water because the Coast Guard launch came too close to it; that the migrants stood up only because the Coast Guard ordered them to raise their hands; and that Yvon might not have drowned had the Coast Guard brought along extra life jackets. These protests ring hollow. Say, for example, that a student neglects his studies, ignores required readings, declines to take advantage of available tutorials, and subsequently flunks the course. The student's indolence is a but-for cause of his failing mark, and that causal connection is not dissolved simply because the instructor posed hard questions on the final examination or refused to grade on a curve.

So it is here. The defendant's conduct would remain a but-for cause of Yvon's death even if the sentencing court had found — which it did not — that the Coast Guard's actions

- 10 -

contributed to the occurrence.  See Burrage, 134 S. Ct. at 888 (explaining that an act can be a but-for cause even "if the . . . act combine[d] with other factors to produce the result" as long as "the other factors alone would not have done so").

The defendant fares no better under the Eighth Circuit's "causally connected" standard.  The sentencing court, analogizing this case to Flores-Flores, 356 F.3d at 862-63, found as a matter of fact that such a causal connection existed.  In Flores-Flores, the defendant accepted money to transport eleven undocumented aliens from one state to another by van.  See id. at 862.  The van was overcrowded (there were not enough seats to go around), so eight of the aliens had to sit on the floor without seatbelts. See id.  Partway through their non-stop 2,000-mile trek, the defendant turned the steering wheel over to one of the passengers. See id.  When that driver fell asleep at the wheel, the van crashed and two passengers died.  See id.  The district court applied the section 2L1.1(b)(7)(D) sentencing enhancement,[5] and the Eighth Circuit affirmed, holding that the deaths were "causally connected

_____

    [5] The Eighth Circuit opinion refers to section 2L1.1(b)(6)(4) rather than section 2L1.1(b)(7)(D).  See Flores-Flores, 356 F.3d at 862.  But this is because the Eighth Circuit was dealing with an earlier edition of the Guidelines Manual, and former section 2L1.1(b)(6)(4) was renumbered as section 2L1.1(b)(7)(D) without any substantive change in later editions of the Guidelines Manual (including the November 2015 edition, which was in effect when the defendant was sentenced).  Since nothing turns on this renumbering, Flores-Flores is on-point authority with respect to the question before us.

to the dangerous conditions created by [the defendant's] unlawful conduct." Id. at 863. The fact that the defendant transported more passengers than the van could safely carry "created a substantial risk of death or serious bodily injury" within the meaning of the guidelines. Id.

Though the defendant's reckless actions occurred at sea and not on land, his case is much the same as Flores-Flores. The defendant overloaded the yola with more people than it safely could carry, set out late in the day in rough seas, and provided nothing in the way of safety equipment. Any one of these conditions would have been hazardous; the combination was lethal. We hold, therefore, that the district court did not err at all — let alone clearly err — in finding a causal connection between the defendant's actions and Yvon's death.

Nor did the district court err when it found reasonably foreseeable that the defendant's actions "could create the sort of dangerous circumstances" likely to result in death. Zaldivar, 615 F.3d at 1351; see De La Cruz-García, 842 F.3d at 3. It requires little imagination to foresee that setting out on a small and overloaded boat in stormy seas and with night approaching is an invitation to disaster. Here, the defendant accepted just such an invitation, and he certainly could have foreseen the sort of calamity that eventually transpired. The court below recognized that the defendant had turned a blind eye to obvious danger and,

- 12 -

thus, found it reasonably foreseeable that the yola would "capsize in the middle of the sea, with unpredictable weather conditions, and in the dark of night."  Similarly, the court found reasonably foreseeable that the passengers would panic, render the yola unstable, and wind up getting hurt without the customary safety equipment.  Last — but not least — the court concluded that it must have been foreseeable to the defendant that the Coast Guard would try to prevent the yola from reaching the United States, especially since the defendant knew that his conduct was illegal.

In the end, we take no view of whether or to what extent section 2L1.1(b)(7)(D) requires a showing of causation.  We have that luxury because, in the case at hand, all roads lead to Rome.  Regardless of what level of causation, if any, section 2L1.1(b)(7)(D) is construed to require, the defendant was subject to the ten-level enhancement.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the defendant's sentence is


**Affirmed.**